Dickman, C. J.
The questions involved in the case at bar go directly to the constitutionality of *501 parts of an act to amend and supplement sections 2777, 2778, 2779 and 2780, of the Revised Statutes of Ohio, passed April 27, 1893. The amendatory section of most material import, and which especially claims our consideration, is section 2778a, which is as follows:
‘‘Every express, telegraph and telephone company, embraced in section 2777, whether chartered by the laws of this state, or any other state or country, doing business in this state, shall, annually, between the first and tenth days of May, return to the auditor of state, under the oath of its treasurer, the amount of its capital stock, its place of business, the par value and market value (or if there be no market value, then the actual value) of its shares at the time of said return. The return shall also contain a statement in detail of the entire real and personal property of said companies and where located, and the value thereof as assessed for taxation; and telegraph and telephone companies shall, in addition thereto, return the whole length of their lines, and the length of so much of their lines as is without and is within the state of Ohio, which lines shall include what said .telegraph and telephone companies control and use, under lease or otherwise; and said board of appraisers and assessors shall, in determining the value of the property of said companies in this state, to be taxed within the state and assessed as herein provided, be guided by the value of said property as determined by the value of the entire capital stock of said companies, and such other evidence and rules as will enable said board to arrive at the true value in money of the entire property of said companies within the state' of Ohio, in the proportion which the same bears to the entire property of *502 said corporations, as determined by the value of the capital stock thereof, and the other evidence and rules as aforesaid. Express companies shall, in making said return, include therein, as a part thereof, a statement of their entire gross receipts for the year ending the first day of May, of the business done within the state of Ohio, giving the receipts of each office in said state, and the location thereof for said year.
Section 2780a, which regulates the apportionment of the valuation of the property of express companies,-and the rate of taxation, provides as follows:
‘ ‘The value of said property, moneys and credits of any express company, as found and determined by such board, to be assessed for taxation within this state, shall be apportioned by said board among the several counties in which said express companies do business, in the proportion that the gross receipts of the business of said express companies in the places where they transact business, bear to the entire gross receipts in this state of said express companies. And the board shall certify to the county auditor of each county, and to each city and incorporated village, township or district, or any part thereof therein, the amount proportioned to his county, and said board shall make and forward a like certificate to go with all the reports of the various express companies, and other papers and evidence, which form the basis of their valuation, to the auditor of state. It shall be the duty of the county auditor, upon receiving the certificate aforesaid, to apportion the amount therein stated to the cities, villages, townships, districts, or parts thereof, and the auditor shall place the same on the tax list, to *503 be assessed and collected the same as.taxes are assessed and collected on other property. And the rate of taxation shall be the same as that assessed against real and personal property in said cities, villages, townships and districts.”
In compliance with the act, The National Express Company made return to the board of appraisers and assessors, consisting of the state treasurer, the attorney-general, and auditor of state, of ali its property in Ohio, and of its entire gross receipts in this state'for the year ending' the first of May, 1893. The board, in accordance with the provisions of the act, fixed the value of the company’s property in Ohio for that year at $9,450.00; and apportioned that valuation among :the several counties of the state in which the company did business, in the proportion which the gross receipts in each county bore to the entire gross receipts in the state — apportioning the sum of $754.00 to Lucas county, and certifying such amount to the auditor of that county, Charles H. Jones, the defendant, to be by him placed on the tax list to be assessed and collected the same as taxes are assessed and collected on other property. On the allegéd ground that the act of April 27, 1893, is in violation of the provisions of the constitution of the United States and of the constitution of Ohio, the auditor refused to apportion the valuation thus certified to him, among the taxing districts of Lucas county, and to place the amount on the tax duplicate; and indeed refused to perform any duties imposed upon him by the act.
In determining whether an act of the legislature is or is not in conflict with the constitution, it is a settled rule, that the presumption is in favor of *504 the validity of the law. The legislative power of the state is vested in the general assembly, and whatever limitation is placed upon the exercise of that plenary grant of power must be found in a clear prohibition by the constiution. The legislative power will generally be deemed ample to authorize the enactment of a law, unless the legislative discretion has been qualified or restricted by the constitution in reference to the subject matter in question. If the constitutionality of the law is involved in doubt, that doubt must be resolved in favor of the legislative power. The power to legislate for all the requirements of civil government is the rule, while a restriction upon the exercise of that power in particular case is the exception. As said by Waite, C. J., in the Sinking Fund Cases, 99 U. S., 700: “One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small deg’ree on a strict observance of this salutary rule.” Until, therefore, the invalidity of an act is shown beyond a reasonable doubt, it is the duty of this court to hold that the co-ordinate legislative department of the state government has not exceeded its constitutional power.
It is contended in behalf of the defendant, that the property of the National Express Company is not, under the act of April 27, 1893, known as the Nichols Law, taxed by a uniform rule; that it is of the same character as the property of individuals, but is valued by a special board,' having a peculiar method; and that the act is in violation of section 2 of article XII, of the constitution of Ohio, which provides that, “laws shall be passed, taxing by a uniform rule, all moneys, credits, investments *505 in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property, according to its true value in money. ”
The constitution thus provides that there shall be equality in the burdens of taxation; and that when the true value of all property, real and personal, has once been ascertained, the same value shall be subjected to the same burden. • Taxation by a uniform rule will require, that the rate of taxation shall be uniform, and such uniformity coextensive with the territory to which it applies, whether the tax is a state, county, township, or city tax; and that every species of property not exempt from taxation, whether lands, goods, money or choses in action, and however used or employed, shall go upon the tax duplicate at its true value in money. The true value in money is adopted as a standard for taxation — as the basis upon which a uniform rate of. taxation is to be fixed. But taxation by a uniform rule does not necessarily demand that there should be the same mode of assessment for every species of property, without regard to any classification.
An assessment, in the sense of a valuation of the property of the taxpaj^er for the purpose of determining- the proportion of tax to be paid, should, it is true, be uniform in its mode, to the extent that the property is assessed according- to its true value in money. But it would not follow that different classes of property may not be valued for taxation by different officers and boards, and by different modes and agencies. The same rigid and inflexible method of assessment for all classes of property might result in a marked inequality in the burden of taxation.
*506 Hence, it has been the policy of the legislature to classify, for the purpose of assessment and taxation, various kinds of property, such as the property of merchants, manufacturers, incorporated banks, unincorporated banks, and bankers, railroad companies, and other corporations. A classification, however, for that purpose does not, of necessity, infringe the constitution of the state, because the same mode and the same officers and boards are not resorted to, for listing and valuing* for taxation the different kinds of property embraced in the respective classes.
As illustrative of differences in the modes of assessment g*rowing out of a classification of the property above referred to, a merchant, by section 2740, of the Revised Statutes, is required to make out and deliver to the assessor a statement of the value of his goods and merchandise, not as estimated on the regular day for listing property under the statute, but the average value during* the year next previous to the time of making such statement, or during such previous months as he shall have been engag*ed in business. Manufacturers, under section 2742, are required to return to the assessor the average value of raw material and manufactured articles on hand during the year next previous, or during' such. portion of the year as they shall have been eng*ag*ed in business.
The mode and agencies employed, under the statute, for listing, valuing and equalizing shares of bank stocks, are not the same as those employed for the like as to other property. Unincorporated banks and bankers, and incorporated banks make returns for taxation to the county auditor, and not to the local assessor. The cashier of each incorporated bank returns annually to the county audi *507 tor the resources and liabilities of the bank, together with the number of shares held by each stockholder, and the par value of each share. The county auditor fixes the total value of the shares according to their true value in money, and deducting the value of real estate included in the statement of resources, transmits a copy of the cashier’s report, together with the valuation of such shares, to an annual state board of equalization consisting of the governor, auditor of state, and attorney-general, who equalize the value of the shares, being authorized to increase or diminish the value returned by the auditor. As in the case of incorporated banks, so, the mode of ascertaining the taxable value of the personal property of unincorporated banks is alike peculiar to those associations, as belonging to a distinct class for the purposes of taxation. Sections 2758-2769 and 2808, Revised Statutes.
In Wagoner v. Loomis, 37 Ohio St., 571, it was urged in argument, that because a method of return, and mode of valuation, and agency for determining valuation, separate and distinct from that as to individuals, was fixed in reference to banks, the law violated section 2 of article XII of the constitution. But it was held in that case, that statutory provisions whereby different classes' of property are listed and valued for taxation in and by different modes and agencies, are not necessarily in conflict with the provisions of the constitution which require all property to be taxed by a uniform rule, and according to its true value in money.
Under the statute, the county auditors of the several counties in the state in which any railroad company has its road or any part thereof, consti *508 tute a board of appraisers and assessors for such company. As a board of valuation, it is made their duty tp apportion the value of the property, moneys, and credits of such railroad company, among the several counties through which such road or any part thereof, runs. And when any railroad company has part of its road in this state, and part in another state, the total value of the property, moneys, and credits of such company is to be apportioned, for the purposes of taxation, in the proportion the length of the road in this state bears to the whole length of the road. It will be observed that, the mode of apportioning the value of the property of railroad companies among the several counties, as provided in section 2774, of the Revised Statutes, is substantially applied in the Nichols law to the apportionment of the value of the property of teleg-raph and telephone companies.
And by section 2744, of the Revised Statutes, a special mode is provided by which corporations, generally, are to list their property for taxation. In all cases return is to be made to the several auditors of the respective counties where such property is situated, and the value of the property is apportioned among the different taxing- districts.
Thus it will be seen, that by legislative enactment, different species of property have been classified, and subjected to different modes of assessment, but all having- in view one result — the ascertainment of the true value in money of the property embraced in the respective classes, and the taxation of all property by a uniform rule. As said in Wagoner v. Loomis, supra, ‘ ‘whether it was wise to adopt different modes and agencies for de *509 termining the value of taxable property, we need not consider. Much might be said in its favor. But we can, and do affirm, with the utmost confidence, that an honest and intelligent discharge of duty by those intrusted with the execution of the respective modes provided by law, would accomplish all that was intended by the constitution.”
But it is contended in behalf of the defendant, that not only was the property of The National Express Company valued by a special board, after a special method, but that its property was not assessed at its true value in money, because the value of the capital stock was taken as a g-uide, thereby, in contravention of the constitution, adding to the intrinsic value of the tangible property in this state a value inherent in the capital stock, and due to the franchise, good will, and business of the company, and the value of its property in other states.
The Express Company, between the first and tenth days of May, as required by the Nichols law, returned to the auditor of state, under the oath of its treasurer, the amount of its capital stock, its place of business, and par value and market value of its shares at the time of such return. The return also contained a detailed statement of the entire real and personal property of the company and where located, and the value thereof as assessed for taxation. The board of appraisers and assessors, in determining the value of the company’s property in this state to be assessed and taxed, were, in the words of the statute, guided by the value of the property as determined by the value of the entire capital stock of the company, and such other evidence and rules as would enable the board to arrive at the true value in money of the *510 entire property of the company within this state, in the proportion which the same bore to the entire property of the company as determined by the value of the capital stock thereof, and other evidence and rules.
The board, in determining the value of the company’s property in this state for taxation, is not required to fix the value of such property upon the principle that the value of the entire property of the company shall be deemed the same as the value of its entire capital stock, thus making the respective values equivalents of each other. But taking the market value of the entire capital stock as a datum, the board is to be only guided thereby in ascertaining the true value in money of the company’s property in this state. The statute does not bind the board to find the value of the entire property of the company equal to that of the entire capital stock. While the value of the property may be less, there may be cases, and not uncommon, in which the value of the property will exceed the market value of the capital stock.
The property or means contributed by the stockholders of a corporation as the fund or basis for the business for which the corporation was formed, constitutes its capital. But “there is a distinction between the capital of a corporation and its capital stock, though they are often used as interchangeable terms. The capital stock is clearly not the same as property possessed by the corporation; for the capital stock remains fixed although the actual property of the corporation varies in value and is constantly increasing or diminishing in amount. What the amount of the capital shall be is within the discretion of the managers, but the amount of the capital stock is limited and deter- *511 ruined by the charter and the laws governing it. It follows therefore that a limit imposed- upon the capital stock of a corporation does not restrict the amount of property which it may own.” Beach, Priv. Corp., § 466.
It is contended that when the value of the shares of the capital stock of a corporation is augmented through the franchise, good will and successful management of the business of the concern, such value should not avail to add to the true value in money of the tangible property of the corporation for the purpose of taxation. The fact, it is said, that the shares in a corporation with a capital stock of $100,000, are selling at $150 each, on a par value of $100, should not serve for guidance in arriving at the true value in money of the tangible property of the company. If the component parts of the whole machinery and apparatus employed in carrying on a trade or manufacturing business were sold separately, at public or private sale, to different purchasers, the market value 'of the capital stock might play a very unimportant part. But the property of a corporation may be regarded in the aggregate, as a unit, an entirety, as a plant designed for a specific object ; and its value may be estimated not in parts, but taken as a whole. If the market value — perhaps the closet approximation to the time value in money — of the corporate property as a whole, were inquired into, the market value of the capital stock would become a controlling factor in fixing the value of the property. Should all the stockholders unite to sell the corporate plant as an entirety, they would not be inclined to sell it for less than the market value of the aggregate shares of the capital stock. Besides, while the amount of the *512 capital stock may be limited by the charter and the laws governing it, the real and personal property of the corporation may be constantly augmented, and may keep pace with any increase in the value of the capital stock. The market value of the capital stock, it is urged, has no necessary relation to the value of the tangible property of the corporation. But such is the well understood relation between the two, that not only is the value of the capital stock an essential factor in fixing the market value of the corporate plant, but the corporate capital or property has a reflex action on the value of the capital stock. ‘ ‘ Shares in a corporation,” says Mr. Morawetz, “represent fractional interests in the entire corporate concern, and their value necessarily depends upon the real capital which the company owns. The whole and the sum of its parts must be equal.” Priv. Corp., § 288.
If by reason of the good will of the concern, or the skill, experience, and energy with which its business is conducted, the market value of the capital stock is largely increased, whereby the value of the tangible property of the corporation, considered as an entire plant, acquires a greater market value than it otherwise would have had, it cannot properly be said not to be its true value in money within the meaning of the constitution, because good will and other elements indirectly entered into its value. The market value of property is what it will bring when sold as such property is ordinarily sold in the community where it is situated ; and the fact that it is its market value cannot be questioned because attributed somewhat to good will, franchise, skillful management of the property, or any other legitimate agency.
*513 It will, we think, be conceded that the earning-capacity of real estate owned by individuals may be considered in fixing its value for taxation. Take an office building on a prominent street in one of our large cities. It will not be doubted, that by care in the selection of tenants, and in the preservation of the reputation of the building, by superior elevator service, by vigilance in guarding- and protecting the property, by the exercise of skill and knowledge in the general management of the premises, a good will of the establishment will be promoted, which will tend to an extra increase in the earning capacity and value of the building. For the purpose of taxation, it would be none the less the true value in money of the building, because contributed to by the operative causes that gave rise to the good will. We discover no satisfactory reason why the same rule should not apply to the valuation of corporate property — why the selling value of the capital stock, as affected by the good will of the business, should be excluded from the consideration of the board of appraisers and assessors under the Nichols Law, charged with'the valuation of corporate property in this state, especially as the capital stock when paid up, practically represents, at least, an equal value of the corporate property.
But it is contended furthermore, that the act of April 27, 1893, is in violation of section 16, article I of the constitution of Ohio, which provides that: “All courts shall be open, and every person, for an injury done him in his land, goods, person or reputation, shall have remedy by due course of law; ” and also in violation of the 14th amendment of the federal constitution, which provides, among other things: “Nor shall any state deprive any *514 person of life, liberty, or property without due process of law.” The property of the express company, it is alleged, was taken without due course or process of law in this, that the act in question does not provide for any notice to the company, nor for a hearing by the board of appraisers and assessors, nor for an appeal to any superior authority for the correction of illegal, erroneous or excessive valuations.
In the case at bar, it will not be claimed that the expressjcompany has, in fact, been deprived of its constitutional right of due process of law. The company had timely notice, and appeared by counsel before the board, and had a full hearing touching its property, money, credits, and the value thereof, and its objections to the Nichols Law.
The law itself states the time when the board shall meet, and the express company could not ignore the time of meeting. The meeting's of the board are not secret, and the company had the right to be present and explain the statement rendered of its property and the value thereof. Indeed, 'without notice from the board, or by the terms of the law, the company would have been unable to make the return prescribed by the statute. And of the company’s return, it majr be said, in the language of the opinion in the Kentucky Railroad Tax Cases, 115 U. S., 321: “This return, made by the corporation through its officers, is the statement of its own case, in all the particulars that enter into the question of the value of its taxable property, and may be verified and fortified by such explanations and proofs as it may see fit to insert.”
*515 In the State Railroad Tax Cases, 92 U. S., 575, it was charged that the board increased tlie estimates of value reported to the auditor of state, without notice to the companies, and without sufficient evidence that it ought to be done; and it was strenuously urged upon the court, that for want of such notice and a hearing, the whole assessment of the property and levy of taxes was void as being without ‘ ‘ due process of law. ’ ’ But it was said by Mr. Justice Miller, in delivering the opinion of the court: “This board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of any one before it to assert a right, or redress a wrong; and, in the business of assessing taxes, this is all that can be reasonably asked. ”
It is said, however, that the act under consideration makes no-provision for an appeal to any higher authority, board, or tribunal authorized to hear complaints, and correct excessive, illegal, or erroneous assessments. The power vested in the state auditor, by section 167 of the Revised Statutes, to correct errors of assessment, though not supplying a complete remedy, is not inapplicable, we think, to the procedure under the act of April 27,1893. The section reads as follows: “He may remit such taxes and penalties thereon as he ascertains to have been illegally assessed, and such penalties as have accrued or may accrue in consequence of the negligence or error of any officer required to do any duty relating to the assessment of property for taxation, or the levy or collection of taxes, and he may,, from time to time, correct any error in any. assessment of property for taxation, or in the duplicate of taxes in any county; provided, .that, when the amount to be remitted in *516 any one case shall exceed one hundred dollars he shall proceed to the office of the governor and take to his assistance the governor and attorney-general, and in all such cases may remit no more than shall be agreed upon by a majority of the officers named.” This section is in pari materia, and is a part-of the taxing system of the-state, or of the machinery for collecting’ the public revenue. The Nichols Law is part of the same system, and is merely an amendment and supplement of the sections of the statute regulating express and telegraph companies. While it might seem improper to submit the quasi judicial action of a board composed of the treasurer, attorney general and auditor of state to the review of the state auditor alone, it would not seem exceptionable, when the amount of - taxes to be remitted exceeded one hundred dollars, that there might be an appeal to a board consisting’ of the governor, auditor of state, and attorney-general.
In Davidson v. New Orleans, 96 U. S., 97, it was laid down as a general proposition, that whenever, by the laws of a state, or by state authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole state or some limited portion of the community, and those laws provide for a mode of confirming or contesting’ the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceeding’s cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections. By section 5848, of the Revised Statutes, “courts of common pleas and *517 superior courts shall have jurisdiction to enjoin the illegal levy of taxes and assessments, or the collection of either.” And by section 5849, in actions to enjoin the illegal levy of taxes and assessments, “if the levy would go upon the county duplicate, the county auditor must.be joined in the action. ” In Jones v. Davis, 35 Ohio St., 474, it was held by this court, that the addition pf an item pf prpperty to the return of ‘the taxpayer, by a board of equalization, with a direction to the auditor to carry the same upon the duplicate, and to assess against it the fixed rate for state, county, and other purposes, does not of itself constitute the levy; nor does the mere ascertainment of the rate of assessment by those whose duty it is to determine the rate to be levied. The process is not complete until the valuation of the property, with the sum to be charged against it, is carried upon the duplicate.
So that, in the case of an express company, after the board of appraisers and assessors has certified to the county auditor the amount proportioned to his county of the value of the company’s property; and before the county auditor has apportioned the amount among the several taxing districts, and placed the same on the tax lists to be assessed and collected as taxes are assessed and collected on other property, an injunction will lie in favor of the company, to enjoin the auditor from carrying such amount upon the duplicate, and thereby afford an opportunity to inquire into the legality of the assessment before a lien attaches, and before the treasurer is warranted to make collection.
In McMillen v. Anderson, 95 U. S., 37, it was held, that a statute which gives a person against whom *518 taxes are assessed a right to enjoin their collection, and have their validity judicially determined, is due process of law. The defendant, a tax collector, of the state of Louisiana, seized property of the plaintiff, and was about to sell it for the payment of a license tax, for which the latter was liable. The plaintiff obtained a temporary injunction against .the sale of the property seized. Defendant pleaded that the seizure was for taxes due, and that his duty as collector required him to make it. Judgment was rendered against the plaintiff, and in the Supreme Court of the United States, it was assigned for error, that the law under which the proceedings of the defendant were had was void, as it deprived the plaintiff of his property without due process of law. But the court was of opinion that the person charged with such a tax was not without legal remedy by the laws of Louisiana. “It is probable,” said the court, “that in that state, as in others, if compelled to pay the tax by a levy upon his property, he can sue the proper party, and recover back the money as paid under duress, if the tax was illegal. But however that may be, it is quite certain that he can, if he is wrongfully taxed, stay the proceeding for its collection by process-of injunction. See Fonqua’s Code of Practice of Louisiana, articles 296-309, inclusive.”
In addition to the foregoing objections to the act of April 27, 1893, on constitutional grounds, others are urged by the defendant, but we deem them untenable, and not sufficiently involved in doubt to require consideration.

The demm-rer to the answer is sustained and a peremptory writ of mandamus allowed.