## THE CITY OF INDIANAPOLIS ET AL. v. HOLT.

[No. 19,391.   Filed July 10, 1900.]

MUNICIPAL CORPORATIONS.— *Street Improvements.*— *Constitutional Law.*—*Indianapolis Charter.*—The provisions of the act of 1891, as amended by the act of 1895 (Acts 1891 p. 137, Acts 1895 p. 384), relative to street improvements in cities having a population of more than 100,000 inhabitants are not violative of articles 5 and 14 of the amendments of the United States Constitution, or §21 of the Bill of Rights of the Constitution of the State of Indiana, as authorizing the taking of private property for public use without due process of law, and without just compensation therefor, since §73 of said act gives the property owner the right to be heard, and §75 furnishes an additional safeguard by requiring liens for street improvements to be enforced only by suit to foreclose in a court of competent jurisdiction, and authorizes the owner, who has not signed a waiver, to contest in such suit the amount of his assessment.   *pp. 226-239.*

SAME.—*Street Improvements.*—*Assessment* —*Front-Foot Rule.*—*Indianapolis Charter.*— The assessment for street improvements by the front-foot rule, as provided by §74 of the act of 1895 (Acts 1895 p. 384), is to be treated as *prima facie* correct, but is not exclusive of the right to have an assessment made according to benefits. *pp. 235-240.*

PLEADING.—*Municipal Corporations.*— *Street Improvements.*— The sufficiency of a complaint attacking the validity of a statute and a street improvement resolution based thereon must be determined by reference to the provisions of the statute, and not by the character of its averments concerning the resolution.   *p. 241.*

From the Marion Superior Court.   *Reversed.*

*J. W. Kern, J. E. Bell, B. K. Elliott, W. F. Elliott* and *F. L. Littleton,* for appellants.

*J. W. Holtzman* and *L. A. Coleman,* for appellee.

DOWLING, J.—In this suit, the validity of the statute relating to the improvement of streets in cities in Indiana, having a population of 100,000 or more is assailed, on the ground that it violates the provisions of articles five and fourteen of the federal Constitution, and section twenty-one of the Bill of Rights of the Constitution of the State of

Indiana, by authorizing the taking of private property for public use without due process of law, and without just compensation therefor.

The action was brought by the appellee against the city of Indianapolis, and its board of public works, to enjoin the letting of a contract for the improvement of one of the public streets of said city. The separate demurrers of the appellants to the complaint were overruled, and judgment was rendered against the defendants below upon the demurrers. From that judgment the city and the board of public works appeal. The errors assigned are the rulings of the court upon the several demurrers.

It appears from the complaint that the appellee is the owner of lot number thirty-seven, in Highland Place addition to the city of Indianapolis; and that said lot abuts on Highland Place, a public street running north and south through said addition, the said street being within the limits of the said city; that the appellant, the city of Indianapolis, is a municipal corporation organized under an act of the General Assembly of the State of Indiana concerning the incorporation and government of cities having more than 100,000 population according to the last preceding United States census, approved March 6, 1891, and the acts of said General Assembly subsequently enacted amendatory thereof, and that said other defendants are the duly appointed, qualified, and acting members of the board of public works of said city. That the said board of public works, in the name and on behalf of said city, did, on the 14th day of March, 1900, adopt a resolution providing for the permanent improvement of the roadway of said Highland Place to a width of fifty-two feet from the south line of Twenty-first street on the north, to the south line of said Highland Place addition on the south, with creosoted wooden blocks; that said Highland Place, between said points, is of the uniform width of seventy-two feet from property line to property line, and that said roadway is

of a uniform width of fifty-two feet from curb to curb; that said board, thereafter, caused notice of such resolution to be published in the Indianapolis Sentinel, a daily newspaper of general circulation in said city, once each week for two weeks, the last of which publications of said notice was made on the 21st day of March, 1900; that said notice named the 2nd day of April, 1900, as the day on which said board would receive and hear remonstrances from persons interested in, or affected by, said improvement; that no remonstrances were filed by any person, and that final action was then and there, on said second day of April, 1900, taken by said board confirming said original resolution without modification; that after ten days had elapsed from the time of taking such final action, to wit, on the 13th day of April, 1900, said board appointed three disinterested resident freeholders of said city as appraisers, who proceeded to appraise the property, exclusive of improvements thereon, abutting on said Highland Place between the terminals of said proposed improvement, and filed their said appraisement with said board; that the cost of said appraisement was thereupon added to the cost of the said proposed improvement, and that the total cost of said improvement, if made, will be less than twenty-five per cent. of the aggregate appraised value of the property abutting on said part of said street proposed to be improved; that said board thereupon advertised for sealed bids for said improvement, to be received on April 27, 1900, pursuant to said resolution, and according to the plans and specifications adopted by said board; that, on said 27th day of April, 1900, several bids were submitted to and opened by said board to improve said street with various kinds of creosoted wooden blocks, being the kind of blocks intended to be used by said board; that said resolution, advertisement, plans, and specifications, provide for the receiving of bids for making said improvement at so much per running or front foot of lots on

each side of said street, the cost of said improvement to be
assessed against the abutting lots within the limits of said
proposed improvement, without reference to the benefits to
accrue to said lots, or any of them, and to be arbitrarily
apportioned to, and assessed against, all of the lots along
the line of said proposed improvement, at the same amount
per running foot of said lots, regardless of the relative
value per running foot of such lots, and without reference
to the benefits accruing to said lots as compared with each
other; that the lowest of said three bids is $5.89 and the
highest $6.99 per running foot front on each side of said
street; that there are eighty-two lots in said addition, and
that all of them are of the same depth; that eighty of them
are of the same width front and rear; that two are irregu-
lar in shape, and differ in size from said other lots; that
the part of said street so propsed to be improved is inter-
sected by another street of said city sixty feet in width;
that still another public street, thirty-three feet wide, enters
said Highland Place within the line of said improvement,
but does not cross the same, and that a certain public alley
in said city, twelve feet in width, enters said street within
the line of said improvement, but does not cross the same;
that by the terms of said resolution and proposed contract,
one-half of the cost of paving said intersecting street, and
one-half of the cost of paving said entering street, and one-
half of the cost of paving said entering alley will be assessed
*pro rata* against the lots abutting on that part of said High-
land Place proposed to be improved, and the remaining
one-half of the cost of said intersecting street and of said
entering street and alley will be apportioned upon the lots
abutting on said intersecting and entering streets and alley
for such distance from said Highland Place as is provided
by law; that appellants have not yet acted on said bids, but
that they are threatening to, and will proceed to do so,
unless restrained and enjoined by the order of the court.

It is further alleged that said lots are of unequal value, some being worth more than others per front foot, both with and without the improvements thereon; that some of said lots are improved with costly buildings, while others are improved with much less valuable structures, and still others are wholly unimproved, and that they are in proportion to their areas of unequal frontage on said Highland Place; that the benefits accruing to appellee's property will not be as much as the benefits accruing to many of the lots, having the same frontage, belonging to other persons; that the only statute under which the appellants acted, or assumed to act, and under which they propose to act is the act of·March 6, 1891, and the subsequent acts amending, and re-amending said amendatory acts; that said acts are invalid, unconstitutional, and void, and that the appellants ought not to be permitted to award said contract for the improvement of said street under the said resolution or bids.

The complaint does not allege that the value of the appellee's lots will not be enhanced to an amount equal to the cost of the proposed improvement assessable against them in this proceeding.

The propositions submitted by counsel for appellee in support of the complaint are these:

(1)  The several statutes of the State of Indiana which, when taken together, are commonly known as the Indianapolis City Charter, in so far as the same relate to the improvement of streets, are in violation of section twenty-one of the Bill of Rights of the Constitution of the State of Indiana, and also in violation of the fifth and fourteenth amendments of the Constitution of the United States.

(2)  The said charter provides for the taking of private property without just compensation.

(3)  The said charter provides for the taking of private property without due process of law.

(4)  The said charter provides for an unjust and unlawful exercise of the taxing power.

City of_Indianapolis *v.* Holt.

(5) Whenever a local assessment upon an individual is not grounded upon and measured by the extent of his particular benefit, it is, *pro tanto,* a taking of private property for public use without any provision for compensation.

(6) The charter affords no opportunity to a property owner to be heard by any tribunal having jurisdiction or authority to determine the benefits before an assessment can finally be collected.

(7) The charter having prescribed a fixed method by which the board of public works shall make assessments, such board cannot do otherwise than to follow such fixed method.

(8) The provision of the charter that in any suit to foreclose the lien of an assessment any property owner may contest the amount of such assessment does not give the property owner the right to have such assessment fixed according to benefits.

(9) The provision of the charter that in any suit to foreclose the lien of an assessment the property owner may contest the amount of such assessment must be construed in connection with the other provisions of the charter.

(10) When that part of the charter providing for contesting the amount of an assessment in a foreclosure suit is construed in connection with the one fixing a rule by which the board of public works is required to make such assessments, then such provision for contesting the amount of the assessment is not broad enough to raise the question of benefits, but merely raises the question whether such board made any error in computing the amount of the assessment.

(11) The charter makes no provision for the payment, out of the general fund, of the cost of improvements in excess of benefits.

(12) The provision of the charter that in all suits to foreclose assessment liens the plaintiff shall recover the amount of the assessment, interest, and attorney's fees, is in conflict with that portion giving the property owner the

right to contest the amount of the assessment.  As one section negatives the other, neither has any validity.

(13)    While the charter and what is known as the Barrett law both provide for a front foot assessment, they are widely different as to the rights of the property owner. The Barrett law provides for a hearing before a tribunal having authority to review, alter, or amend, the assessment on the basis of actual special benefits received, while the charter provides only for a contest as to the amount of the assessment.

The several provisions of the act in question (Acts 1891, p. 167), necessary to be considered, are the following:

"Sec. 57 (§6870 Horner 1897).    The department of public works shall have for its head a board of three members, to be appointed by the mayor, not more than two of whom shall be of the same political party.    *    *    *    No member of said board shall have any authority to act on behalf of the same, except pursuant to an order of the board, regularly made at a meeting of the same, at which meeting a majority of said board shall have been present. All actions of the board shall be recorded by the clerk thereof, together with the record of the vote of each member, where the vote is not unanimous.    The board shall make rules governing the time and place for holding regular and called meetings, and for giving notice thereof."

"Sec. 59 (§6872 Horner 1897).    The board of public works shall have power    *    *    *    to lay out, open, change, vacate, and to fix or change the grade of any street, alley, or public place within such city, and to design, order, contract for, and execute the improvement or repair of any street, alley, or public place within such city."

"Sec. 62 (§6875 Horner 1897).    All the expenses incurred or authorized by such board of public works shall be payable out of the general funds of such city appropriated to the use of such board and available for the particular purpose, except where this act specifically directs that

the same is to be paid for by assessments against property holders."

"Sec. 63 (§6876 Horner 1897). Whenever the board of public works shall desire to appropriate or condemn, for the use of such city, any property, real or personal, or to open, change, lay out or vacate any street, alley, or public place within such city, including proposed street or alley crossings of railways in cases where the proposed street or alley is to cross a railway, it shall adopt a resolution to that effect, describing the property which may be injuriously or beneficially affected, and shall cause notice of such resolution to be published in some daily newspaper of general circulation in such city once each week for two weeks. Such notice shall name a date, after the last day of publication, at which such board will receive or hear remonstrances from persons interested in or affected thereby. Said board shall consider such remonstrances, if any, and thereupon take final action, confirming, modifying or rescinding their original resolution. Such action shall be final and conclusive upon all persons."

"Sec. 73 (§6886 Horner 1897). Whenever the board of public works shall order the improvement of any street, alley, sidewalk or other public place in such city, in whole or in part, it shall adopt a resolution to that effect, setting forth a description of the place to be improved, and full details, drawings and specifications for such work. Notice of such resolution shall be published, remonstrances heard, said original resolution modified, confirmed or rescinded, in the same manner as heretofore more specifically provided by this act with regard to the condemnation of property and the opening of streets. If such original resolution be confirmed or modified it shall be final and conclusive on all persons, unless within ten days thereafter, one-half of all the resident freeholders upon such street, alley, or proposed improvement, remonstrate against such improvement. In case of such remonstrance, the improvement shall not take place unless specifically ordered by an ordinance within

sixty days thereafter, passed by a two-thirds vote of the council, and approved by the mayor."

"Sec. 74 (§6887 Horner 1897). If said board shall finally order such improvements, and shall advertise for bids and let the contract for the same, the cost of any street or alley improvement shall be estimated according to the whole length of the street or alley, or so much thereof to be improved as is uniform in the extent and kind of the proposed improvement per running foot, and the total cost thereof, exclusive of one-half the cost of street and alley intersections, shall be apportioned upon the lands or lots abutting thereon. The remaining one-half cost of street and alley intersections shall be apportioned upon the lands or lots abutting on the street or alley intersecting the street or alley under improvement for a distance to the street line of the first street extending across the said intersecting street or alley in either direction from the street or alley improved. * * * Such city shall be liable to the contractor for the contract price of such improvement to the extent of the moneys actually received by such city from the assessments for such improvements hereinafter provided for, and the owners of property bordering on such street or alley shall be liable to the city for their proportion of the cost, exclusive of one-half the cost of street and alley intersections, in the ratio of the front line of their land or lots, whether platted or not, owned by them, to the whole cost [line] of the improvement for that part of the said street or alley on which said land or lots are located, and which is uniform in extent and quality of improvement. And the owners of lots or lands on the streets or alleys intersecting or entering into such street or alley shall be liable to the city for their proportion of the cost of improving the one-half of the street and alley intersections, in the proportion that their front line on said street or alley bears to the sum of the length of the front lines of said lots or lands abutting on said street or alley for

a distance, as provided above, from the street or alley under improvement. Said city shall have separate and several liens upon such lands or lots from the time the contract for such improvement is finally let, for the respective assessments against each lot or parcel of land."

"Sec. 75 (§6888 Horner 1897). Lots or lands bordering on such street or alley shall be assessed and liable to the payment of such assessment primarily, and if not sufficient to pay for the same, then the lots or lands shall be liable for a distance back from the front line along such street or alley of fifty feet, whether the same shall be owned by the same or different persons. In case said fifty feet shall not sell for enough to pay such assessment, then the ground for a distance of 100 feet farther back shall be liable to sale; and in case of unimproved lands or unplatted ground, if said 150 feet fail to sell for enough to pay the assessment, the whole of such land shall be liable to sale. * * * In all suits brought to foreclose such liens the plaintiff shall recover the amount of the assessment, principal and interest, together with a reasonable attorney's fee, and the court shall order that sale shall be made without relief from valuation or appraisement laws. * * * Suits to foreclose may be brought by any contractor entitled to enforce any liens, or any assessment or assessments, against a person or persons who have made default in payment thereof, or by his assignee. * * * Foreclosure suits may be instituted for the enforcement of assessments and liens as herein provided by the holder of any bonds or coupons in cases where bonds are issued in anticipation of the collection of assessments against a party or parties in default, for the collection of such bonds or coupons and the enforcement of the lien or assessment securing the same, as well as by any contractor or his assignee where no bonds are issued. In such foreclosure suits no defense shall be allowed upon any irregularity in the proceedings making, ordering or directing such assessment,

nor shall any question as to the propriety or expediency of any improvement or work be therein made. A property owner who has not, or property owners who have not, signed a waiver or exercised or claimed the option to pay in instalments, may, however, contest the amount of his or their assessment, but where a property owner or property owners has or have exercised the option to pay in instalments and has or have signed a waiver or exercised the option to pay in instalments such property owner or owners shall be concluded thereby and shall not be permitted to set up any defense whatsoever."

Sections 78 and 81 provide for the deposit of the assessment roll with the treasurer, the preparation of what is called the local assessment duplicate, notice by the treasurer to each person affected by the same, and suit for the recovery of the amount due. The issue of street or public improvement bonds, payable out of the fund actually paid to and collected by the city on such account, in anticipation of the collection of such assessments, and the enforcement of the payment of the assessments evidenced by such bonds, by sale of the lands and lots liable therefor by the county treasurer, are also provided for. After the issue of such bonds, it is declared that no suit shall lie to enjoin the collection of any assessment, and that the validity of the same shall not be questioned, but that all property owners shall be conclusively estopped and precluded from assailing the effectiveness or validity thereof in any manner.

It will be observed that two opportunities to be heard, after full notice, are granted to the lot owner. Section 73 of the act of 1895 (Acts 1895, p. 400), contains the following: "Whenever the board of public works shall order the improvement of any street, * * * it shall adopt a resolution to that effect, setting forth a description of the place to be improved, * * *. Notice of such resolution shall be published, remonstrances heard, said original resolution modified, confirmed or rescinded, in the same

manner as heretofore more specifically provided by this act with regard to the condemnation of property and the opening of streets."

That part of the statute which relates to the condemnation of property and the opening of streets, as has been seen, expressly declares that notice of such condemnation proceedings, describing the property which may be injuriously or beneficially affected, and fixing a date for the hearing of remonstrances from persons interested in, or affected thereby, must be given by publication in a daily newspaper of general circulation in such city, once each week for two weeks. The act further provides that remonstrances may be received from persons interested in, or affected by, such proceedings, and that the board of public works shall consider such remonstrances, and take final action upon them, confirming, modifying, or rescinding the original resolution.

Whenever a public street or alley is to be improved, the statute requires that notice of the resolution of improvement shall be published, remonstrances heard, such original resolution modified, confirmed, or rescinded, in the same manner as in the case of the condemnation of property and the opening of streets. Would the enforcement of this statute against the lots of the appellee in the proceeding to improve the street known as Highland Place street deprive him of his property without due process of law, or just compensation therefor? We think the question must be answered in the negative.

It has been held that due process of law requires an orderly proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. *Kizer* v. *Town of Winchester,* 141 Ind. 694; *Stuart* v. *Palmer,* 74 N. Y. 183; *Garvin* v. *Daussman,* 114 Ind. 429, 5 Am. St. 637; Cooley on Const. Lim., 355; *Hagar* v. *Reclamation Dist.,* 111 U. S. 701, 4 Sup. Ct. 663, 28 L. ed. 569; 2 Kent's Com., 13;

*Wynehamer* v. *People,* 13 N. Y. 378; *Rowan* v. *State,* 30 Wis. 129, 146; *Ex parte Ah Fook,* 49 Cal. 402; *People* v. *Board, etc.,* 70 N. Y. 228; *San Mateo* v. *Southern Pacific* R. Co., 13 Fed. 722, 8 Am. & Eng. R. Cas. 1, 27.

In *Happy* v. *Mosher,* 48 N. Y. 313, 317, it is said with reference to "due process of law": "It need not be a legal proceeding according to the course of the common law; neither must there be personal notice to the party whose property is in question. ·It is sufficient if a kind of notice is provided by which it is reasonably probable that the party proceeded against will be apprised of what is going on against him, and an opportunity is afforded him to defend."

In *Wurts* v. *Hoagland,* 114 U. S. 606, 5 Sup. Ct. 1086, 29 L. ed. 229, the constitutionality of a law of New Jersey, regulating the procedings of the drainage of marsh lands, was under consideration. In deciding the case, the law was thus declared: "As the statute is applicable to all lands of the same kind, and as no person can be assessed under it for the expense of drainage without notice and opportunity to be heard, the plaintiffs in error have neither been denied the equal protection of the laws, nor been deprived of their property without due process of law, within the meaning of the fourteenth amendment of the Constitution of the United States. *Barbier* v. *Connolly,* 113 U. S. 27, 31, 5 Sup. Ct. 357, 28 L. ed. 923; *Walker* v. *Sauvinet,* 92 U. S. 90, 23 L. ed. 678; *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. ed. 616; *Hagar* v. *Reclamation District,* 111 U. S. 701."

In *Davidson* v. *New Orleans, supra,* Mr. Justice Bradley, in a concurring opinion, said: "I think, therefore, we are entitled, under the fourteenth amendment, not only to see that there is some process of law, but 'due process of law,' provided by the state law when a citizen is deprived of his property; and, that in judging what is 'due process of law,' respect must be had to the cause and object

of the taking whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or none of these; and if found to be suitable or admissible in the special case, it will be adjudged to be 'due process of law'; but if found to be arbitrary, oppressive, and unjust, it may be declared to be not 'due process of law.' Such an examination may be made without interfering with that large discretion which every legislative power has of making wide modifications in the forms of procedure in each case, according as the laws, habits, customs, and preferences of the people of the particular state may require."

*In re Ryers,* 72 N. Y. 1, it is said: "Due process of law in the fourteenth amendment to the United States Constitution does not mean by a judicial proceeding." See, also, *McMillen* v. *Anderson,* 95 U. S. 37, 24 L. ed. 335; *Reagh* v. *Spann,* 3 Stew. (Ala.), 100, 108; *Risser* v. *Hoyt,* 53 Mich. 185, 201, 18 N. W. 611.

The statute under examination secures to each property holder, whose lot or land may be affected by the proposed improvement, notice of the proceeding, and the right to be heard before the board of public works by way of remonstrance; no assessment against a lot affected by the improvement can be enforced except by suit to foreclose it in a court of competent jurisdiction; and, in such suit, the property holder who has not signed a waiver of all defenses and irregularities, or exercised or claimed the option to pay in instalments conferred by the statute, is expressly authorized to contest the amount of his assessment.

It is contended, however, by counsel for appellee that the last mentioned provision of the statute authorizes only an inquiry as to the mathematical correctness of the assessment made upon the basis of the front-foot rule. It is argued that this must be so because the statute does not give to the property owner the right in such foreclosure suit to have the assessment made according to the benefits received by

the separate lot, or expressly confer on the court the power to make an assessment on that basis. It is also objected that the statute fixes the sum of the recovery at the amount of the assessment, interest, and attorney's fees, and that this provision is inconsistent with the supposed privilege of contesting the amount of the assessment on the ground that it exceeds the special benefits received. The additional difficulty is suggested that, if the benefits should be found to be less than the cost of the improvement, no provision is made for the payment of the deficiency to the contractor.

In a proceeding of this kind, the one thing in which the property owner is more seriously interested than any other is the proportionate share of the burden of the cost of the improvement which may lawfully be imposed upon his lot or land. The constitutional principle which protects the lot owner from an assessment against his property in excess of the special benefits received by the lot from the improvement is a limitation and restriction upon the amount of such assessment. It does not require that statutes making provision for the improvement of streets and other public ways shall prescribe any particular mode of ascertaining and assessing benefits. If an assessment against a piece of land exceeds the special benefits received by the tract from the improvement, the principle referred to would prevent the collection of the excess of such cost over the benefits. If the statute under which the assessment was made prohibited or excluded the consideration of benefits, and the apportionment of the cost of the improvement with reference thereto, the rule would render such statute void. The principle involved is not a new one. The courts, generally, have recognized the proposition that such special benefit to the particular lot is the legal foundation of exactions for the construction of public improvements, which not only enhance the value of the abutting lots, but are beneficial to the public also. The unsettled point has been whether in making provision for the payment of the cost of such im-

provement the legislature had the power to create, or author-
ize the creation of, a taxing district, and to declare, con-
clusively, that the property within its limits should be
deemed benefited to the amount of the whole cost of the
improvement, and in an equal ratio per front foot, and
liable to assessment in that ratio; or, whether such assess-
ments should be limited to the amount of the special bene-
fits actually received by each separate lot or tract affected by
the improvement. Until very recently, the power to create
such taxing district, and to subject the property therein to
the payment of the full amount of the cost of the improve-
ment, was generally recognized, and even now many courts
are reluctant to admit that such power may not be exercised
without violation of the provisions of the Constitution pro-
tecting the owner of private property from unlawful exac-
tions on account of such improvements. Assuming, how-
ever, that the correct rule is that the assessment for such
improvements must be according to the benefits received
by the property assessed, such a construction should be
given the provisions of the statute under examination, if
its language will authorize it, as will enable the court
to uphold it. The right to contest the amount of the as-
sessment, as we understand the statute, includes the right
to show that the assessment is erroneous because it exceeds
the sum of the special benefits received by the lot as-
sessed. The words of the statute should receive a fair
interpretation, and we cannot restrict the import of the
clause "shall have the right to contest the amount of the
assessment" to the correction of mere clerical mistakes,
without doing violence to the letter and spirit of the act.

But, it is contended that, if the fact that the assessment
upon the particular lot exceeded the benefits received by
such lot should be judicially ascertained in such foreclosure
suit, the court would be without authority to make a correct
assessment founded upon special benefits, for the reason
that no basis of assessment is authorized by the statute except

what is known as the front-foot rule. In our opinion, this conclusion does not follow. Few of the powers which may be exercised by a municipal corporation are more important, or more necessary to the convenience and welfare of its citizens than the power to lay out, improve, and repair its streets and thoroughfares. This attribute is included in the grant of powers in every municipal charter whether general or special. It is a fundamental principle of statutory interpretation that the general grant of a power carries with it the right to employ the means essential to its legitimate exercise. The statute, under which the city of Indianapolis is incorporated, in its enumeration of the powers of the municipal government to be exercised through the board of public works, declares that the board shall have power "To lay out, open, change, vacate, and to fix or change the grade of any street, alley, or public place within such city, and to design, order, contract for, and execute the improvement or repair of any street, alley, or public place within such city." Acts 1891, §59 (Acts 1891 p. 167), §3830 Burns 1894, §6872 Horner 1897. The power "to design, order, contract for, and execute the improvement" is the principal thing. The means by which the cost of the improvement is to be assessed and collected are secondary.

The lots and lands abutting upon the improvement are, unquestionably, subject to assessment on account of such improvement, and, under the rule spoken of, the only limitation upon such liability is that such assessment cannot lawfully exceed the amount of the special benefits received by such lots and lands. Any mode of assessment prescribed by the legislature, whether the front-foot rule or any other, is to be regarded as subject to this condition, and, unless inquiry into the question of special benefits is excluded or prohibited by the statute, such inquiry may properly be made by any tribunal before which the question of the collection of an assessment is brought.

Our conclusion is that the statute in question which se-

cures to each property holder, whose lot or land may be assessed for the improvement of a street, notice of the proceeding, and the right to be heard by way of remonstrance against such improvement, together with the right to contest the amount of the assessment in any suit brought to enforce the same, sufficiently provides for the protection of the rights of the owners of the lots, and is not objectionable on the ground that it contravenes the fifth and fourteenth amendments of the Constitution of the United States, or the twenty-first specification of the Bill of Rights of the Constitution of the State of Indiana.

The ground of the judgment in *Norwood* v. *Baker*, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. ed. 443, was stated to be: "That the assessment against the plaintiff's abutting property was under a rule which *excluded* any inquiry as to special benefits, and the necessary operation of which was, to the extent of the excess of the costs of opening the street in question over any special benefits accruing to the abutting property therefrom, to take private property for public use without compensation."

The court say that: "The assessment was by the front foot and for a specific sum representing such cost, and that sum could not have been reduced under the ordinance of the village, even if proof had been made that the costs and expenses assessed upon the abutting property exceeded the special benefits. The assessment was in itself an illegal one because it rested upon a basis that excluded any consideration of benefits. A decree enjoining the whole assessment was therefore the only appropriate one."

And further: "We have seen that, by the Revised Statutes of Ohio, relating to assessments, the village of Norwood was authorized to place the cost and expense attending the condemnation of the plaintiff's land for a public street on the general tax list of the corporation, §2263; but if the village declined to adopt that course, it was required by §2264 to assess such cost and expense 'on the abutting and

such adjacent and contiguous or benefited lots and lands in the corporation, *either* in proportion to the benefits which may result from the improvement *or* according to the value of the property assessed, *or* by *the front foot* of the property bounding and abutting upon the improvement'; while by §2271, whenever any street or avenue was opened, extended, straightened or widened, the special assessment for the cost and expense, or any part thereof, 'shall be assessed only on the lots and lands bounding and abutting on such part or parts of said street or avenue, so improved, and shall include of such lots and lands only to a fair average depth of lots in the neighborhood.' It thus appears that the statute authorizes a special assessment upon the bounding and abutting property by the front foot for the entire cost and expense of the improvement, without taking special benefits into account. And that was the method pursued by the village of Norwood The corporation manifestly proceeded upon the theory that the abutting property could be made to bear the whole cost of the improvement, whether such property was benefited or not to the extent of such cost."

The Ohio statute authorized the village to adopt an alternative proceeding which excluded the consideration of benefits. In the acts before us, we find nothing which forbids or excludes an investigation as to the special benefits, or which prevents an assessment on that basis. This court held in *Adams* v. *City of Shelbyville,* 154 Ind. 467, that the assessment by the front-foot rule, under the general law for the incorporation of cities, is to be treated as *prima facie* correct; but that it is not exclusive of the right to have an assessment made according to benefits. We are satisfied that this is the correct interpretation of the statutes now before us, and we discover nothing in this view of the law inconsistent with the principles stated in *Norwood* v. *Baker.* *Shroder* v. *Overman,* 61 Ohio St. 1, 55 N. E. 158; *Sears* v. *City of Boston,* 173 Mass. 71, 53 N. E. 138, 43 L. R. A. 834; *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. ed. 616;

City of Indianapolis v. Holt.

*Hagar* v. *Reclamation District,* 111 U. S. 701; *Spencer* v. *Merchant,* 125 U. S. 345, 8 Sup. Ct. 921, 31 L. ed. 763; *Garvin* v. *Daussman,* 114 Ind. 429; *Reinken* v. *Fuehring,* 130 Ind. 382, 30 Am. St. 247; *Law* v. *Johnston,* 118 Ind. 261; *Kizer* v. *Town of Winchester,* 141 Ind. 694; *Adams* v. *City of Shelbyville,* 154 Ind. 467.

There is nothing in the provision that the amount of the recovery shall be the sum of the assessment, with interest and attorney's fees, inconsistent with the right to contest the amount of such assessment in the manner indicated in this opinion. The evident meaning of this clause of the statute is that the measure of recovery shall be such sum as may lawfully be assessed against the land with the interest and attorney's fees added thereto.

The question as to the payment to the contractor of the difference between the sum which may be collected on account of the assessments for the improvement, and the total cost of the work, does not arise in this case, and we do not feel called upon to decide it. Neither is it necessary for us to express an opinion upon the provisions of the statute in regard to the issue of improvement bonds in anticipation of the collection of the assessments.

Some of the averments of the complaint are very broad as to the character of the resolution passed by the board of public works providing for the improvement of the street, but the pleading does not attempt to set out the contents of that resolution, and these averments seem to be statements of conclusions only. The question of the sufficiency of the complaint in this respect must be determined by reference to the provisions of the statute, and not by the character of its averments concerning the legal effect of the resolution.

Judgment reversed, with instructions to sustain the demurrers to the complaint, and for further proceedings not inconsistent herewith.

Baker, C. J., and Hadley, J., dissent.

### DISSENTING OPINION.

HADLEY, J.—I find myself unable to agree with the majority in this case.

It was unanimously held by this court in *Adams* v. *City of Shelbyville*, 154 Ind. 467, that under the doctrine of the federal Supreme Court in *Norwood* v. *Baker*, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. ed. 443, among the principles applicable to assessments for local improvements are the following: "Each parcel of contributing property may be assessed only to the extent that it actually receives special benefits; the taxing district as a whole may be assessed only to the extent of the sum of the special benefits actually received by the several parcels of contributing property; the improvement so far as its cost exceeds the special benefits resulting to the several parcels of property in the taxing district, is a benefit to the municipality at large, and such excess must be borne by the general treasury; property owners affected by an improvement, within a taxing district, are entitled to a hearing on the question of special benefits."

With much deference for the views of the majority, I am, after careful consideration, unable to reach the conviction that the Indianapolis charter is constructed upon a recognition of the foregoing principles. We are agreed that if an exaction for local improvements shall exceed the special benefits, to the extent of the excess, it is a taking of private property for public use without just compensation. We are also agreed that if the Indianapolis charter may be so construed as to give to assessing officers the power to grant a hearing upon the question of benefits, and upon such hearing the power to make or adjust assessments upon the basis of special benefits, then the law meets the requirements of the Constitution. The point of divergence is upon the true meaning of the statute, and involves two propositions: (1) Does it require the assessment of the total cost of an improvement upon the frontage equally per running

foot without reference to the question of special benefits, and (2) does it give the property owners affected due process of law?

I submit that the first of these propositions should be answered in the affirmative, and the second in the negative. It should be borne in mind that prior to the decision in *Norwood* v. *Baker,* 172 U. S. 269, 19 Sup. Ct. 187, 43 L. ed. 443, December 12, 1898, and at the time the city charter was enacted, for more than forty years, it had been accepted as the law in this State, and in most states of the Union, as well as by the federal courts, that it was a proper exercise of legislative discretion to declare as matter of law that the special benefits accruing to property within a particular district by a local improvement was equal to the cost. And while the right to exact the total cost of an improvement from the abutters was uniformly made to rest upon special benefits received, yet the constitutional right of the legislature arbitrarily to declare the equality of burden and benefit had never been challenged, as it appears, in this State as being a denial of due process of law or as a taking of property without compensation, prior to the adoption of the charter. And excepting the act of 1889, commonly known as the Barrett law, which expressly provides for a hearing of persons aggrieved by equal frontage assessments, and the right of the common council to alter and change the frontage apportionment before final action upon the assessments, and except further the act of 1893 (Acts 1893, p. 202), relating to cities of 35,000 (Fort Wayne), which, possibly, by section 82, p. 245, provides a sufficient hearing, the legislation of this State has all been framed since 1852 in accordance with this view of the law, and street and alley improvements prosecuted thereunder. See R. S. 1852, p. 217, Acts 1857, p. 53, Acts 1865 (S. S.) p. 29, Acts 1867, p. 66, Acts 1893, with respect to cities of not less than 50,000 nor more than 100,000 (Evansville), p. 65.

So when the charter was adopted the arbitrary front-foot rule had been maintained in this State for many years under the sanction of the Constitution, State and federal, so far as those instruments had then been interpreted by the courts of last resort, and the constitutional objections that have since arisen could not then have influenced the lawmakers. *Snyder* v. *Town of Rockport,* 6 Ind. 237; *City of Indianapolis* v. *Imberry,* 17 Ind. 175; *Goodrich* v. *Turnpike Co.,* 26 Ind. 119; *Bright* v. *McCullough,* 27 Ind. 223; *Palmer* v. *Stumph,* 29 Ind. 329; *Law* v. *Turnpike Co.,* 30 Ind. 77.

The ruling in *Adams* v. *City of Shelbyville,* 154 Ind. 467, lends no support to the Indianapolis charter in respect to the questions here involved. The charter has no such foundation to stand upon as the Barrett law. By the latter statute the common council is expressly authorized to pay any part of the cost of a street improvement from the general treasury. By the latter statute it is also expressly provided that the cost of an improvement shall be *estimated* by the front-foot rule; that, preparatory to the assessment by the common council, the city engineer shall apportion the cost per front foot and report his act to the council, and the council shall thereupon, after the publication of notice giving contents of report and fixing a time and place for the hearing of grievances, and having considered all grievances, approve such report, or change and alter the same as made on the frontage rule, and finally determine and fix the amount of assessment that each abutter shall pay.

These provisions of the Barrett law, which underlie the decision in *Adams* v. *City of Shelbyville, supra,* are wholly omitted from the charter, both in terms and principle. It is a familiar rule that the power to tax can be conferred only by statute and exercised only in the mode appointed therein.

Section 74 of the charter act (as amended Acts 1899, p. 558), provides: "If said board shall finally order such

improvement, * * * and let the contract for the same, the cost of any street or alley improvement shall be esti- mated according to the whole length of the street or alley * * * per running foot, *and the total cost thereof* * * * *shall be apportioned upon the lands or lots abutting thereon* * * *. Such city shall be liable to the contractor for the contract price of such improvement to the extent of the moneys actually received by such city from the assessments for such improvement * * * and the owners of prop- erty bordering on such street or alley shall be liable to the city for their proportion of the cost, * * * in the ratio of the front line of their land or lots, whether platted or not, owned by them, to the whole cost of the improve- ment."

There is nowhere in the law any shadow of authority for the board of public works, the only body having authority to make assessments, to change the method or basis of dis- tributing the cost of an improvement from the frontage rule. With respect to the assessments, the board has no discretion, no right of judgment. The language conferring the power to make the assessments specifically directs how the power shall be exercised. The limit of their power and duty is to carry out the mandate of the legislature and to "apportion the total cost of the improvement upon the lands and lots abutting thereon", and having determined the cost of an improvement, by making a contract therefor, and as- certained, by measurements and mathematical calculations, the *pro rata* share of each abutter, to write down the several amounts as final assessments, showing in the roll thus made a description of each piece of property, the name of the owner and total *pro rata* assesssment against each lot. When the assessment roll is thus completed the department of works shall prepare and deliver a duplicate thereof to the department of finance, and the duty and authority of the board of works in relation to the assessments is at an end. When the work is completed and approved by the

board, the department of finance shall deliver the duplicate assessment roll to the city treasurer for collection. It is clear that no city officer or department has any right to change the assessments as fixed by the arbitrary, definite rule of the statute which excludes all consideration of the question of benefits.

It also seems unreasonable that the legislature should confer upon the city authority to improve streets and provide the necessary revenue by special assessments, and at the same time deny the city officers the power to make valid assessments. And this is precisely what is done if the city officers are confined to the definite, fixed rule, and the court when it comes to enforce the assessment has power to overthrow it because not made on a legal basis. It places the legislature in the awkward position of requiring the assessing officers, in making the assessments and in providing a fund for payment of the contractor, to follow one rule, which excludes the consideration of benefits, and the court in enforcing the assessments to follow an entirely different one, which includes the consideration of benefits. The situation the court thus finds itself in, in reviewing the assessments, is truly unique. If it finds that the assessing officers have made the assessments in the manner required of them by the law, it must then hold the assessments invalid, not because the assessing officers have violated the law, but because they have not violated it.

Another reason why I believe the lawmakers intended that the assessments, as apportioned by the board of works under the rule prescribed, should constitute an incontestable charge against the property is the absence of any provision for the payment of a deficit in the assessments to meet the contract price when they have been adjusted to the basis of actual benefits. The total assessments authorized by the law in any case are limited to the amount of the contract price plus incidental expenses. This limitation obviously purposes the raising of only enough money to pay

the contractor and expenses. It is expressly provided that the city shall be liable to the contractor only to the extent of the money collected by it from the assessments, thus constituting the assessment roll the only source of payment for the work; and it seems incredible that the legislature, in providing a system of public improvements, should purposely imperil fair dealing by providing means whereby the contract price of an improvement, after the contract has been faithfully performed, shall be subject to indefinite reduction by requiring it to be scaled down by the court to the basis of actual special benefits conferred by the improvement upon abutters. Where would such a power lead to? If the net sum of actual special benefits conferred is to be the ultimate sum realized upon the contract, and these benefits are to be determined upon the testimony of the friends and neighbors of the abutters, what can form the basis upon which the contractor can reckon his bid? Manifestly there can be no reliable basis to count upon, and no bidding at a fair price; and such a power, even if it does not impair the obligation of contracts, would be clearly against public policy.

Still another reason appears why the legislature did not intend that the court shall adjust assessments to the basis of benefits. It is very clear that that body fully understood the scope and meaning of "a hearing" within the constitutional requirement. In the condemnation of property for the opening of streets and other city purposes it is provided in §§63 to 69, inclusive, of the charter, being §§3834 to 3840, inclusive, Burns 1894, that when the board of public works shall determine to make an appropriation of lands, they shall adopt and publish a resolution to that effect, giving therein a description of the property to be taken, a time for hearing of remonstrances, and, after consideration of the remonstrances, it shall confirm, modify, or rescind the original resolution; the same proceeding that is required when it decides upon a street improvement. When final

action is had upon the resolution, the board is then required to prepare a roll of all property damaged or benefited by the opening of the proposed street, and names of owners, and shall thereupon assess the damages and benefits to each piece of property on said roll. Upon the completion of said assessments the board shall cause a written notice to be served upon the owner of each piece of property, showing the amount of the assessment and naming a place and time, not less than ten days, when the board will hear all persons feeling aggrieved on the question of the amount of the awards and assessments; and if such owner is a non-resident, notice shall be given by publication; and if a minor, the board shall by the proper proceeding procure the appointment of a guardian for such infant, and then serve such notice upon such guardian. And upon the day fixed the board shall hear all remonstrances and shall thereupon sustain or modify such awards and assessments; and any person feeling aggrieved by this final action of the board may within twenty days appeal from the board to the circuit or superior court, and such court shall hear the question of damages and benefits *de novo,* and confirm, lower, or increase the sum as it may deem just.

Upon completion of the assessment roll in this way the same shall be forthwith delivered to the department of finance, and the assessments from that time shall be a lien upon the property, superior to all liens except taxes. The department of finance shall at once prepare a duplicate of the assessment roll and deliver it to the city treasurer "and the duties of the treasurer and the department of finance, in respect thereto, shall be the same as are hereinafter more specifically prescribed with regard to assessments for street improvements."

By the language just quoted, it is obvious that the legislature had in mind, at the time, the method to be pursued in assessing the cost of a street improvement, a subject that next follows in the statute, and equally obvious from the

foregoing provisions that it knew not only what is meant by a hearing as to benefits, but was capable of employing apt and suitable language in expressing that meaning. Can it be then that a legislature, feeling it expedient to provide in such elaborate detail for due process of law in respect to the opening of streets, in providing for the improvement of streets, after prescribing a definite and fixed rule for the guidance of assessing officers, a rule from which there can be no departure however apparent it may be to the assessing officers that under the rule the amount of an assessment is in excess of the benefits, should, in awarding due process of law, content itself with a single, isolated clause in a subsequent section, that, in suits to enforce the assessment made in the way commanded, the defendant "may contest the amount of the assessment"? To say that a hearing as to benefits in street improvement cases is contemplated by the act, as in street opening cases, is to admit the unanswerable question, Why did the legislature deem it proper and necessary so fully to prescribe it in one case, and omit it in the other?

It is also a familiar rule of construction that, when two inconsistent provisions appear in a statute, that one must stand which is in harmony with the spirit and other provisions of the same act. Here it is imperatively commanded that the total cost of an improvement shall be apportioned upon the frontage by the running foot; and in the same section, authorizing the defendant to contest the amount of his assessment, it is subsequently provided that in such suit the court shall give the plaintiff judgment for the amount of the assessment, principal, interest, and costs. It seems to me that what is meant by the language "may contest the amount of the assessment," is that the defendant may require the amount to be brought to the accurate result, as it should be, from a due application of the law. If he has been assessed on fifty feet, and he owns but forty-five, this irregularity must be corrected, and the court give judgment

for the full amount of the assessment as it would have been if no error had been committed. Under this construction, the statute becomes one consistent, harmonious system, a system that not only makes provision for the making of improvements, but also for paying for the same, yet a system violative of the twenty-first section of our Bill of Rights and of the fifth and fourteenth amendments to the federal Constitution.

Finally, conceding that the charter gives to property owners, who do not sign the waiver, the right to contest the amount of their assessment on the basis of actual benefits, it is very certain that it does not give those who do sign a waiver the same right. This to my mind is one of the chief vices of the law. I am loath to believe that the lawmakers intended that one class of abutters should pay such part of the cost of an improvement as equals the sum of special benefits received by them, and that another class should pay the balance of the cost without reference to the question of benefits. The clear purpose of the provision is to give those who are unable to pay the exaction in a lump sum the chance to save their property by paying in instalments through a long term of years at a moderate rate of interest. The purpose is to benefit those of small means without injuring the contractor or those who pay in full, and, while not relieving them from an equal and just share of the cost of an improvement, it was obviously intended to put them in a situation to pay their part without oppression or serious loss. Surely it was not intended that the impecunious person should pay a greater proportion of the cost than his more fortunate neighbor, yet the ruling leads to this result. If those who do not avail themselves of the right to pay by instalments are permitted to reduce their assessments to the sum of actual benefits received, the result will necessarily follow that contractors will demand an unfair price in anticipation of a loss upon this class of assessments. It can make no difference to those who are pros-

perous and prepared to pay in full whether the contract price is reasonable or unreasonable, fair or unfair, since in no event can they be required to pay more than the amount of benefits received. It is therefore that class of abutters who are unable to pay their assessments in lump sum, and who are compelled to sign a waiver to secure the right to pay by instalments, who must ultimately bear the entire burden of exhorbitant contracts and improvident improvements. To illustrate: An improvement at a fair price costs $10,000, but the sum of actual special benefits conferred is but $5,000. Those owning two-fifths of the frontage are able and will pay their assessments in full, and are assessed the total sum of $4,000. Those owning three-fifths of the frontage are not able to pay in lump sum, and are assessed the total of $6,000. Those owning the two-fifths refuse to sign a waiver, contest for actual special benefits, and reduce their assessments from $4,000 to $2,000. The contractor must therefore lose $2,000 of his contract price. But suppose the contractor anticipates this result and makes his bid $13,000 instead of $10,000. Then there must be assessed against the non-waivers $5,200, and against those who sign the waiver $7,800. But the non-waivers will require a reduction of the sum assessed against them, from $5,200 to $2,000, the sum of their actual benefits, and the contractor must even then be content with $9,800, which is $200 less than a fair price for the work; and those who signed the waiver and whose special benefits, on the same ratio, are but $3,000, are required to pay $7,800, being $4,800 in excess of benefits, and the excess thus exacted of them being about forty-eight per cent. of the total sum paid for the work.

Can it be that the law will sanction such a possibility? And yet it is much more than a possibility. The principle will operate in some degree in every improvement made. If the assessments are demanded alike from all abutters, as originally made by the board of works, as I think it was

City of Indianapolis *v.* Holt.

intended they should be, then the extension of time for pay-ment, while it can injure no one, will be a substantial bene-fit to those of small means, and I can not, therefore, in the absence of clear and explicit terms, yield to that construc-tion of the law which will accord to the prosperous the right to demand that his assessment shall not exceed his benefit, when the exercise of that right will effect a material increase in the burden of the hapless cottager who must choose be-tween the dire alternatives of giving up his property or sub-mitting to an unjust exaction. A statute intended as a beneficence to that class of society whose rights the law cautiously guards should not, by construction, be turned into an instrument of oppression. It is no answer to say that the waiver constitutes a new contract upon a sufficient consideration, made with the eyes open, when the statute shows upon its face that such contracts are, or may be, which amounts to the same thing, secured by a species of coercion.

## DISSENTING OPINION.

BAKER, C. J.—It is said that the provisions in reference to a notice and a hearing contained in section 73 of the In-dianapolis charter of 1891, together with the opportunity afforded the property owner to defend against the fore-closure suit mentioned in section 75 as amended in 1895, exempt the charter from the operation of the constitutional principles promulgated in the Norwood-Baker case.

Section 73 directs the board of public works, whenever it orders the improvement of a street, to "adopt a resolu-tion to that effect". "Notice of such resolution shall be published, remonstrances heard, said original resolution modified, confirmed, or rescinded, in the same manner as heretofore more specifically provided by this act with regard to the condemnation of property and the opening of streets. If such original resolution be confirmed or modified, it shall be final and conclusive on all persons, unless within ten days thereafter two-thirds of all the resident freeholders

upon such street or alley remonstrate against such improvement. In case of such remonstrance, the improvement shall not take place unless specifically ordered by an ordinance within sixty days thereafter, passed by a two-thirds vote of the council, and approved by the mayor."

Section 74 and following provide how, after an improvement has been determined upon, the cost shall be apportioned and collected. It seems clear, therefore, that section 73 can have relation to no question except the advisability of undertaking the improvement. And, since the city has the absolute authority to order the improvement to be undertaken against the unanimous protest of the property owners, the remonstrance evidences no higher legal right than the old petition to the king. *Quill* v. *City of Indianapolis,* 124 Ind. 292, 7 L. R. A. 691; *Barber, etc., Co.* v. *Edgerton,* 125 Ind. 455; *Adams* v. *City of Shelbyville,* 154 Ind. 467. This section 73 does not impair any constitutional right, because the city could have been granted authority to decide upon the necessity of the improvement without giving the property owners an opportunity to express their opinion on that question. But, equally, this section does not protect the owner in his constitutional rights in reference to the method of assessing his property, because that question is governed exclusively by subsequent sections.

This plain meaning can not properly be overcome, I think, by any commixture of section 73 and the provisions of the charter in reference to the condemnation of property. Section 63 (Acts 1891, p. 171) provides: "Whenever the board of public works shall desire to appropriate * * * any property * * * it shall adopt a resolution to that effect, describing the property which may be injuriously or beneficially affected, and shall cause notice of such resolution to be published in some daily newspaper of general circulation in such city once each week for two weeks. Such notice shall name a date, after the last day of publication, at which said board will receive or hear remonstrances from

persons interested in or affected thereby. Said board shall consider such remonstrances, if any, and thereupon take final action, confirming, modifying or rescinding their original resolution. Such action shall be final and conclusive upon all persons." Sections 64-68 direct that, after the condemnation has been determined upon, the board shall cause a list to be prepared of the persons and property affected by the condemnation; shall proceed to award the damages sustained and to assess the benefits accruing to each piece of property on the list; shall thereupon cause written notice to be served upon each owner showing the amount of his award or assessment and fixing a time and place for him to remonstrate against the amount of his award or assessment; and shall, after a hearing upon the remonstrances, decide the amount, from which decision the owner may appeal to the circuit court of the county. It thus appears that in condemnation cases the property owner has his constitutional rights fully protected; but this protection is found wholly in sections 64-68. The hearing in section 63 is on the advisability of the board's proceeding with its declared intention to condemn certain property. And section 73, where it directs that "notice of such resolution shall be published, remonstrances heard, said original resolution modified, confirmed, or rescinded, in the same manner as heretofore more specifically provided by this act with regard to the condemnation of property", refers to section 63 and not at all to sections 64-68.

I do not perceive how the sum of a naught and a definite quantity differs in value from the definite quantity standing alone; and I therefore believe that the property owners' constitutional safeguards must be looked for in sections 74-82 which alone refer to the apportionment and collection of special assessments for street improvements.

These sections in clear and mandatory language require the board of public works to assess against the abutting property the total cost of the improvement by the arbitrary

front-foot rule, to make out an assessment roll accordingly, and to deliver the roll to the department of finance. With that, the duties of the board of public works are at an end. There is no provision in the charter similar to section seven of the Barrett law by which the board of public works is authorized or compelled, on a hearing after notice thereof, to alter or amend the roll so that the assessments shall not exceed the special benefits actually received. It is not pretended that the board of public works may disregard the arbitrary front-foot rule and lay assessments on some other basis. So far, then, as the board is concerned, the statute excludes the consideration of special benefits actually received.

But it is claimed that amended section 75 gives the circuit court, when the contractor comes to foreclose his lien, a power that renders harmless the arbitrary front-foot method required of the board of public works. The section states that the property owner who has not signed a waiver "may contest the amount of his assessment". This is construed to mean that the property owner may require the court to go into the question of special benefits actually received as a matter of fact and to enter judgment for an amount not exceeding such benefits. For reasons set forth at length in the dissenting opinion in *Adams* v. *City of Shelbyville,* 154 Ind. 467, I think this method of interpretation ignores the context, disregards preceding sections, and violates the entire scope and manifest intent of the act. Furthermore, in my judgment, the method is self-destructive by proving that the property owner would have the same right to require the circuit court to determine from evidence what his special benefits actually were, even if the words in question were omitted from the statute. The interpretation results from the following argument as I understand it: The constitutional principle requiring that a special assessment for street improvements shall not exceed the special benefits in fact received is a limitation

City of Indianapolis *v.* Holt.

and restriction upon the amount of such assessment; therefore the words "may contest the amount of his assessment" include the right of the property owner to show. that his assessment was not made according to the constitutional principle and the power of the court to hear and determine what the assessment should be according to the Constitution. In my opinion, a property owner need not depend upon the grace of the legislature to enable him to assert in court a right conferred directly by the Constitution. If this be true, it would follow that when the contractor begins his foreclosure suit in a court of equity the defendant would have the right to answer that the assessment was not made according to the constitutional principle, without having to point the court to some statute authorizing that defense. And this result, I take it, is arrived at by the majority in holding that "Any mode of assessment prescribed by the legislature, whether the front-foot rule or any other, is to be regarded as subject to this condition [the constitutional restriction], and, unless inquiry into the question of special benefits is excluded or prohibited by the statute, such inquiry may properly be made by any tribunal before which the question of the collection of an assessment is brought." That is: The statute requires the board of public works to make the assessments by the front-foot rule; but the contractor must go into court to foreclose; and the court, unless prohibited by the statute, may inquire into special benefits in fact received and render judgment for the amount thereof. It is plain that the omission of the words from the statute "may contest the amount of his assessment" would not be a statutory prohibition of the right of the court to conduct an inquiry into special benefits.

So the question becomes: What is the power of a court of equity in a foreclosure suit wherein the plaintiff seeks to recover upon a special assessment for street improvements, laid by the assessing officers according to the front-foot rule under a statute that does not authorize them to pursue any

other method? The property owner answers that the assessment was made by the board of public works, the assessing officers, according to an unconstitutional method. The plaintiff replies, in avoidance, that the court is a court of equity and has the power in this proceeding to make and collect an assessment according to constitutional principles. In coming to a conclusion that would require circuit courts to sustain and act upon such a reply, the majority hold, as I understand them, that the general grant of power to improve streets carries with it as an incident the right to use the means essential to the legitimate exercise of that power. In concrete form, and applied to the present case, the proposition is this: The city has a general grant of power to improve streets; even if the city officers are required to make the assessment by the front-foot rule, the court, in a suit to foreclose such an assessment, has the right, as an incident to the city's general power, to use the means essential to the constitutional exercise of the power to improve streets.

In further support of their conclusion, the majority apply to the assessments made by the board of public works the holding, in *Adams* v. *City of Shelbyville,* that the engineer's report by the front-foot rule, as required by section six of the Barrett law, was to be treated only as *prima facie* correct. But there is a vast difference between the Barrett law and the Indianapolis charter. Under the Barrett law it was held that the front-foot rule prescribed in sections three to six was not binding upon the council because in section seven was found a power in the council, on a hearing after notice to the property owners, to change the basis of assessment from frontage to special benefits actually received; and that there was no assessment until one was made by the council after the hearing. Under the Indianapolis charter there is no provision similar to section seven of the Barrett law. The board of public works are definitely commanded to assess

by frontage. It is not contended that they may take actual special benefits into account. The contractor brings into court an assessment by frontage. If the court is not limited to determining whether or not the assessment is correct by the rule under which the statute commanded the assessing officers to lay it (and on this question alone is the assessment merely *prima facie* correct), but has the power to decide what the property owner ought to pay by the rule of actual special benefits, it was supererogation for the court to base its decision upholding the Barrett law on the power given by section seven to the assessing officer to adopt actual special benefits as the basis of assessment; for under the Barrett law as well as under the Indianapolis charter, the collection of assessments may be resisted in court.

The power of a court of equity in a foreclosure suit upon a special assessment, laid by the city's assessing officers according to frontage, was definitely decided, in my opinion, by the Supreme Court of the United States in the Norwood-Baker case. The Ohio statute gave the village the option of adopting by ordinance the front-foot method or the method of measuring the assessments by benefits actually received. The village chose the front-foot method. The court said: "The assessment was in itself an illegal one because it rested upon a basis that excluded any consideration of benefits. A decree enjoining the whole assessment was therefore the only appropriate one." The court announced the self-evident proposition that the *basis* of frontage in and of itself necessarily excludes the consideration of special benefits actually received. If this be true of an assessment by frontage under a statute that gave the village an option of methods, why is it not true of an assessment by frontage under a statute that gives the city no option?

The Supreme Court of the United States decided that "a decree enjoining the whole assessment was therefore the only appropriate one", because, as I view it, the court of equity, when the defendant interposed his constitutional

guaranties as a defense, as he had the right to do without the consent or over the prohibition of the legislature, was bound to protect his rights by declaring the statute that authorized the frontage method and the ordinance under that statute to be unconstitutional. But this court is now deciding (what the Supreme Court of the United States had the opportunity and refused to hold) that it is the duty of the court of equity to treat an assessment by frontage, which is final so far as the city is authorized to act, as only *prima facie* evidence of the amount the defendant ought to pay on the basis of special benefits actually received, and to determine from all the evidence what that amount really is. Thus, the court of equity lays a constitutional assessment and enters final judgment for its payment in the one proceeding. Thus, the property owner is given no opportunity to pay his assessment laid according to constitutional principles except with the addition of costs and his adversary's attorneys' fees, though he may have stood ready from the beginning to pay his assessment on that basis if the city could and would have given him the chance. Thus, the court of equity, exclusively an agency of the judicial department of the State, provides the method of laying assessments,—exclusively a power of the legislative department; and makes the assessment,—exclusively a function of the administrative department. Thus, the court of equity is required to hold an act which commands the city to assess by frontage to be unobnoxious to the constitutional guaranty of the basis of actual benefits, because it is the duty of the court of equity to disregard the basis of the assessment sued upon (and therefore the statute that prescribed that basis) and to inquire *de novo* and determine for itself what the assessment should be on the constitutional basis.

It may be that the Supreme Court of the United States will decide that a controversy over street assessments between citizens of the same State, under a statute providing ample notice of assessments by frontage and affording due

opportunity to property owners to be heard on the question whether the assessments have been equally and properly apportioned by frontage, presents no Federal question. It may be that the rulings announced in *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. ed. 616, and in other cases cited in the majority opinion herein, will be held to be controlling in cases like the present one. But, until then, I think the principles promulgated in *Norwood* v. *Baker,* should be frankly followed.