## · DAVIDSON *v.* NEW ORLEANS.

An assessment of certain real estate in New Orleans for draining the swamps
  of that city was resisted in the State courts, and by writ of error brought
  here, on the ground that the proceeding deprives the owner of his property
  without due process of law.

1. The origin and history of this provision of the Constitution, as found in Magna
   Charta, and in the fifth and fourteenth amendments to the Constitution of
   the United States, considered.

2. The court suggests the difficulty and danger of attempting an authoritative
   definition of what it is for a State to deprive a person of life, liberty, or
   property without due process of law, within the meaning of the fourteenth
   amendment; and holds that the annunciation of the principles which govern
   each case as it arises is the better mode of arriving at a sound definition.

3. This court has heretofore decided that due process of law does not in all cases
   require a resort to a court of justice to assert the rights of the public against
   the individual, or to impose burdens upon his property for the public use.
   *Murray's Lessee et al.* v. *Hoboken Land and Improvement Company,* 18 How.
   272, and *McMillan* v. *Anderson,* 95 U. S. 37.

4. In the present case, the court holds that it is due process of law, within the
   meaning of the Constitution, when the statute requires that such a burden,
   or the fixing of a tax or assessment before it becomes effectual, must be
   submitted to a court of justice, with notice to the owners of the property,
   all of whom have the right to appear and contest the assessment.

5. Neither the corporate agency by which the work is done, the excessive price
   which the statute allows therefor, nor the relative importance of the work
   to the value of the land assessed, nor the fact that the assessment is made
   before the work is done, nor that the assessment is unequal as regards the
   benefits conferred, nor that personal judgments are rendered for the amount
   assessed, are matters in which the State authorities are controlled by the
   Federal Constitution.

ERROR to the Supreme Court of the State of Louisiana.

On the 7th of December, 1871, the petition of the city
of New Orleans and the administrators thereof was filed in
the Seventh District Court for the Parish of Orleans, setting
forth an assessment on certain real estate, made under the
statutes of Louisiana, for draining the swamp lands within the
parishes of Carroll and Orleans; and asking that the assess-
ment should be homologated by the judgment of the court.
The estate of John Davidson was assessed for various parcels in
different places for about $50,000. His widow and testamen-
tary executrix appeared in that court and filed exceptions to
the assessment; and the court refused the order of homologation,

and set aside the entire assessment, with leave to the plaintiffs to present a new tableau.

On appeal from this decree, the Supreme Court of Louisiana reversed it, and ordered the dismissal of the oppositions, and decreed that the assessment-roll presented be approved and homologated, and that the approval and homologation so ordered should operate as a judgment against the property described in the assessment-roll, and also against the owner or owners thereof. Mrs. Davidson then sued out the writ of error by which this judgment is now brought here for review.

*Mr. James D. Hill* and *Mr. John D. McPherson* for the plaintiff in error.

The legislation of Louisiana, under which the judgment below was rendered, deprives the plaintiff in error of her property without due process of law. The jurisdiction of this court is, therefore, established. *Bank of Columbia* v. *Okely,* 4 Wheat. 244; *Loan Association* v. *Topeka,* 20 Wall. 655; *United States* v. *Cruikshank,* 92 U. S. 542; *Munn* v. *Illinois,* 94 id. 113; *People* v. *Hurlbut,* 24 Mich. 44; Cooley, Taxation, 486, 487.

The legislature cannot impose upon the owner of lands a personal obligation to pay an assessment which is a charge upon them. *Taylor* v. *Palmer,* 31 Cal. 240; *Neenan* v. *Smith,* 50 Mo. 525, followed in 56 id. 286, 350.

The legislature, by employing a private corporation to do the drainage of the city of New Orleans, on account of which the assessment was made, fixing the price and requiring that warrants therefor shall be issued and indorsed, compelled the city to make a contract. This was beyond the legislative power. *Atkins* v. *Randolph,* 31 Vt. 226; *Hampshire* v. *Franklin,* 16 Mass. 76; *Taylor* v. *Porter,* 4 Hill (N. Y.), 143; *Brummer* v. *Litchfield,* 2 Greenl. (Me.) 28; *People* v. *Detroit,* 28 Mich. 228; *Sharpley* v. *Philadelphia,* 21 Pa. 165; *Washington Avenue Case,* 69 id. 362; *Sleight* v. *People,* 7 Chic. Leg. News, 292; *The People* v. *The Mayor,* 57 Ill. 18; *People* v. *Salomon,* id. 38; *People* v. *Chicago,* id. 582; *Madison County* v. *People,* 58 id. 463; *Hessler* v. *The Drainage Commissioners,* 53 id. 105; *Livingston* v. *Wider,* id. 302.

The assessment was made before any work had been done.

The only ground, however, on which special assessments are imposed is that the property assessed is benefited. *Wright* v. *Boston*, 9 Cush. 232, 241; *Schinly* v. *Commonwealth*, 30 Pa. 29, 57; *Sharp* v. *Speir*, 4 Hill, 82; *Matter of Opening Streets*, 20 La. Ann. 497; *Reeves* v. *Treasurer Wood County*, 8 Ohio St. 338.

In this case, no benefit whatever inured to the plaintiff in error, and the price was exorbitant.

*Mr. Philip Phillips, contra.*

The fifth amendment to the Constitution, which declares that no person shall be "deprived of life, liberty, or property without due process of law, nor shall private property be taken for public use without just compensation," is a limitation on the powers granted by that instrument to the Federal government, and not a restraint upon the States. *Barron* v. *The Mayor and City Council of Baltimore*, 7 Pet. 243; *Withers* v. *Buckley et al.*, 20 How. 84; *Twitchell* v. *The Commonwealth*, 7 Wall. 321.

The fourteenth amendment, which operates on the legislation of the several States, in no wise affects their police power. *Commonwealth* v. *Alger*, 7 Cush. (Mass.) 84; *Thorpe* v. *Rutland Railroad*, 27 Vt. 149; *Slaughter-House Cases*, 16 Wall. 36; Cooley, Const. Lim. 509; Dillon, Corp., sect. 598.

The power here in question is of that character, and the mode of exercising it presents no matter which can be reexamined here.

MR. JUSTICE MILLER delivered the opinion of the court.

The objections raised in the State courts to the assessment were numerous and varied, including constitutional objections to the statute under which the assessment was made, and alleged departures from the requirements of the statute itself. And although counsel for the plaintiff in error concede, in the first sentence of their brief, that the only Federal question is, whether the judgment is not in violation of that provision of the Constitution which declares that "no State shall deprive any person of life, liberty, or property without due process of law, the argument seems to suppose that this court can correct any other error which may be found in the record.

1. It is said that the legislature had no right to organize a

private corporation to do the work, and, by statute, to fix the price at which the work should be done.

2. That the price so fixed is exorbitant.

3. That there may be a surplus collected under the assessment beyond what is needed for the work, which must in that event go into the city treasury.

Can it be necessary to say, that if the work was one which the State had authority to do, and to pay for it by assessments on the property interested, that on such questions of method and detail as these the exercise of the power is not regulated or controlled by the Constitution of the United States?

Of a similar character is the objection much insisted on, that, under the statute, the assessment is actually made before, instead of after, the work is done. As a question of wisdom, — of judicious economy, — it would seem better in this, as in other works which require the expenditure of large sums of money, to secure the means of payment before becoming involved in the enterprise; and if this is not due process of law, it ought to be.

There are other objections urged by counsel which may be referred to hereafter, but we pause here to consider a moment the clause of the Constitution relied on by plaintiff in error. It is part of sect. 1 of the fourteenth amendment. The section consists of two sentences. The first defines citizenship of the States and of the United States. The next reads as follows: —

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law."

The section was the subject of very full and mature consideration in *Slaughter-House Cases*, 16 Wall. 36. In those cases, an act of the Louisiana legislature, which had granted to a corporation created for the purpose the exclusive right to erect and maintain a building for the slaughter of live animals within the city, was assailed as being in conflict with this section. The right of the State to use a private corporation and confer upon it the necessary powers to carry into effect sanitary regu-

lations was affirmed, and the decision is applicable to a similar objection in the case now before us. The argument of counsel and the opinion of the court in those cases were mainly directed to that part of the section which related to the privileges and immunities of citizens; and, as the court said in the opinion, the argument was not much pressed, that the statute deprived the butchers of their property without due process of law. The court held that the provision was inapplicable to the case.

The prohibition against depriving the citizen or subject of his life, liberty, or property without due process of law, is not new in the constitutional history of the English race. It is not new in the constitutional history of this country, and it was not new in the Constitution of the United States when it became a part of the fourteenth amendment, in the year 1866.

The equivalent of the phrase "due process of law," according to Lord Coke, is found in the words "law of the land," in the Great Charter, in connection with the writ of *habeas corpus*, the trial by jury, and other guarantees of the rights of the subject against the oppression of the crown. In the series of amendments to the Constitution of the United States, proposed and adopted immediately after the organization of the government, which were dictated by the jealousy of the States as further limitations upon the power of the Federal government, it is found in the fifth, in connection with other guarantees of personal rights of the same character. Among these are protection against prosecutions for crimes, unless sanctioned by a grand jury; against being twice tried for the same offence; against the accused being compelled, in a criminal case, to testify against himself; and against taking private property for public use without just compensation.

Most of these provisions, including the one under consideration, either in terms or in substance, have been embodied in the constitutions of the several States, and in one shape or another have been the subject of judicial construction.

It must be confessed, however, that the constitutional meaning or value of the phrase "due process of law," remains to-day without that satisfactory precision of definition which judicial decisions have given to nearly all the other guarantees of per-

sonal rights found in the constitutions of the several States and of the United States.

It is easy to see that when the great barons of England wrung from King John, at the point of the sword, the concession that neither their lives nor their property should be disposed of by the crown, except as provided by the law of the land, they meant by " law of the land " the ancient and customary laws of the English people, or laws enacted by the Parliament of which those barons were a controlling element. It was not in their minds, therefore, to protect themselves against the enactment of laws by the Parliament of England. But when, in the year of grace 1866, there is placed in the Constitution of the United States a declaration that " no State shall deprive any person of life, liberty, or property without due process of law," can a State make any thing due process of law which, by its own legislation, it chooses to declare such? To affirm this is to hold that the prohibition to the States is of no avail, or has no application where the invasion of private rights is effected under the forms of State legislation. It seems to us that a statute which declares in terms, and without more, that the full and exclusive title of a described piece of land, which is now in A., shall be and is hereby vested in B., would, if effectual, deprive A. of his property without due process of law, within the meaning of the constitutional provision.

A most exhaustive judicial inquiry into the meaning of the words " due process of law," as found in the fifth amendment, resulted in the unanimous decision of this court, that they do not necessarily imply a regular proceeding in a court of justice, or after the manner of such courts. *Murray's Lessee et al.* v. *Hoboken Land and Improvement Co.*, 18 How. 272. That was an action of ejectment, in which both parties asserted title under Samuel Swartwout: the plaintiff, by virtue of an execution, sale, and deed, made on a judgment obtained in the regular course of judicial proceedings against him; and the defendant, by a seizure and sale by a marshal of the United States, under a distress-warrant issued by the solicitor of the treasury, under the act of Congress of May 20, 1820.

When an account against an officer who held public money had been adjusted by the proper auditing officer of the treasury,

and the party who was found indebted neglected or refused to pay, that statute authorized the solicitor of the treasury to issue a distress-warrant to the marshal of the proper district, which, from the date of its levy and the record thereof in the District Court, should be a lien on the property on which it was levied for the amount due; and the marshal was required to collect the amount, by sale of said property, or that of the sureties on his official bond.  It was argued that these proceedings deprived Swartwout of his property without due process of law. " The objections," says the court, " raise the questions whether, under the Constitution of the United States, a collector of the customs, from whom a balance of account has been found to be due by accounting officers of the treasury, designated for that purpose by law, can be deprived of his liberty or property, in order to enforce payment of that balance, without the exercise of the judicial power of the United States, and yet by due process of law, within the meaning of those terms in the Constitution; and, if so, secondly, whether the warrant in question was such due process of law."

The court held that the power exercised was executive, and not judicial; and that the issue of the writ, and the proceedings under it, were due process of law within the meaning of the Constitution.  The history of the English mode of dealing with public debtors and enforcing its revenue laws is reviewed, with the result of showing that the rights of the crown, in these cases, had always been enforced by summary remedies, without the aid of the usual course of judicial proceedings, though the latter were resorted to in the Exchequer Court, when the officers of the government deemed it advisable.  And it was held that such a course was due process of law within the meaning of that phrase as derived from our ancestors and found in our Constitution.

It is not a little remarkable, that while this provision has been in the Constitution of the United States, as a restraint upon the authority of the Federal government, for nearly a century, and while, during all that time, the manner in which the powers of that government have been exercised has been watched with jealousy, and subjected to the most rigid criticism in all its branches, this special limitation upon its powers has rarely been invoked

in the judicial forum or the more enlarged theatre of public discussion. But while it has been a part of the Constitution, as a restraint upon the power of the States, only a very few years, the docket of this court is crowded with cases in which we are asked to hold that State courts and State legislatures have deprived their own citizens of life, liberty, or property without due process of law. There is here abundant evidence that there exists some strange misconception of the scope of this provision as found in the fourteenth amendment. In fact, it would seem, from the character of many of the cases before us, and the arguments made in them, that the clause under consideration is looked upon as a means of bringing to the test of the decision of this court the abstract opinions of every unsuccessful litigant in a State court of the justice of the decision against him, and of the merits of the legislation on which such a decision may be founded. If, therefore, it were possible to define what it is for a State to deprive a person of life, liberty, or property without due process of law, in terms which would cover every exercise of power thus forbidden to the State, and exclude those which are not, no more useful construction could be furnished by this or any other court to any part of the fundamental law.

But, apart from the imminent risk of a failure to give any definition which would be at once perspicuous, comprehensive, and satisfactory, there is wisdom, we think, in the ascertaining of the intent and application of such an important phrase in the Federal Constitution, by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded. This court is, after an experience of nearly a century, still engaged in defining the obligation of contracts, the regulation of commerce, and other powers conferred on the Federal government, or limitations imposed upon the States.

As contributing, to some extent, to this mode of determining what class of cases do not fall within its provision, we lay down the following proposition, as applicable to the case before us: —

That whenever by the laws of a State, or by State authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole

State or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections.

It may violate some provision of the State Constitution against unequal taxation ; but the Federal Constitution imposes no restraints on the States in that regard.  If private property be taken for public uses without just compensation, it must be remembered that, when the fourteenth amendment was adopted, the provision on that subject, in immediate juxtaposition in the fifth amendment with the one we are construing, was left out, and this was taken.  It may possibly violate some of those principles of general constitutional law, of which we could take jurisdiction if we were sitting in review of a Circuit Court of the United States, as we were in *Loan Association* v. *Topeka* (20 Wall. 655).  But however this may be, or under whatever other clause of the Federal Constitution we may review the case, it is not possible to hold that a party has, without due process of law, been deprived of his property, when, as regards the issues affecting it, he has, by the laws of the State, a fair trial in a court of justice, according to the modes of proceeding applicable to such a case.  This was clearly stated by this court, speaking by the Chief Justice, in *Kennard* v. *Morgan* (92 U. S. 480), and, in substance, repeated at the present term, in *McMillan* v. *Anderson* (95 id: 37).

This proposition covers the present case.  Before the assessment could be collected, or become effectual, the statute required that the tableau of assessments should be filed in the proper District Court of the State ; that personal service of notice, with reasonable time to object, should be served on all owners who were known and within reach of process, and due advertisement made as to those who were unknown, or could not be found. This was complied with ; and the party complaining here appeared, and had a full and fair hearing in the court of the first instance, and afterwards in the Supreme Court.  If this be not

due process of law, then the words can have no definite meaning as used in the Constitution.

One or two errors assigned, and not mentioned in the earlier part of this opinion, deserve a word or two.

It is said that the plaintiff's property had previously been assessed for the same purpose, and the assessment paid. If this be meant to deny the right of the State to tax or assess property twice for the same purpose, we know of no provision in the Federal Constitution which forbids this, or which forbids unequal taxation by the States. If the act under which the former assessment was made is relied on as a contract against further assessments for the same purpose, we concur with the Supreme Court of Louisiana in being unable to discover such a contract.

It is also said that part of the property of plaintiff which was assessed is not benefited by the improvement. This is a matter of detail with which this court cannot interfere, if it were clearly so; but it is hard to fix a limit within these two parishes where property would not be benefited by the removal of the swamps and marshes which are within their bounds.

And lastly, and most strongly, it is urged that the court rendered a personal judgment against the owner for the amount of the tax, while it also made it a charge upon the land. It is urged with force, — and some highly respectable authorities are cited to support the proposition, — that while for such improvements as this a part, or even the whole, of a man's property connected with the improvement may be taken, no personal liability can be imposed on him in regard to it. If this were a proposition coming before us sitting in a State court, or, perhaps, in a circuit court of the United States, we might be called upon to decide it; but we are unable to see that any of the provisions of the Federal Constitution authorizes us to reverse the judgment of a, State court on that question. It is not one which is involved in the phrase "due process of law," and none other is called to our attention in the present case.

As there is no error in the judgment of the Supreme Court of Louisiana, of which this court has cognizance, it is

*Affirmed.*

MR. JUSTICE BRADLEY.  In the conclusion and general tenor of the opinion just read, I concur.  But I think it narrows the scope of inquiry as to what is due process of law more than it should do.

It seems to me that private property may be taken by a State without due process of law in other ways than by mere direct enactment, or the want of a judicial proceeding.  If a State, by its laws, should authorize private property to be taken for public use without compensation (except to prevent its falling into the hands of an enemy, or to prevent the spread of a conflagration, or, in virtue of some other imminent necessity, where the property itself is the cause of the public detriment), I think it would be depriving a man of his property without due process of law.  The exceptions noted imply that the nature and cause of the taking are proper to be considered. The distress-warrant issued in the case of *Murray's Lessee et al.* v. *Hoboken Land and Improvement Co.* (18 How. 272) was sustained, because it was in consonance with the usage of the English government and our State governments in collecting balances due from public accountants, and hence was "due process of law."  But the court in that case expressly holds that "it is manifest that it was not left to the legislative power to enact any process which might be devised.  The article is a restraint on the legislative, as well as on the executive and judicial, power of the government, and cannot be so construed as to leave Congress free to make any process ' due process of law' by its mere will."  p. 276.  I think, therefore, we are entitled, under the fourteenth amendment, not only to see that there is some process of law, but " due process of law," provided by the State law when a citizen is deprived of his property; and that, in judging what is "due process of law," respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or none of these: and if found to be suitable or admissible in the special case, it will be adjudged to be " due process of law; " but if found to be arbitrary, oppressive, and unjust, it may be declared to be not " due process of law."  Such an examination may be made without interfering with that large discretion

which every legislative power has of making wide modifications in the forms of procedure in each case, according as the laws, habits, customs, and preferences of the people of the particular State may require.