Bradbury, J.
The plaintiffs, upon two grounds, deny the legality of the proceedings by which the taxable value of their property was raised above that fixed by the preceding decennial appraisement.
i. Because the statute authorizing the proceeding violates two provisions of the constitution of the state: 2. Because due notice of the proceedings was not given' to them.
The statute, they aver, conflicts with article 2, section 26, of the constitution, which declares: ‘ ‘All laws of a general nature shall have a uniform operation throughout the state.” And also with section 2, of article XII, which declares: “Laws shall be passed, taxing by a uniform rule all real and personal property.”
The act assailed is found in volume 89 Ohio Laws, 283. It provides for the appointment by the probate court of a board of equalization composed of three members, not more than two of whom shall belong to the same political party. It also provides for their organization, prescribes their duties and fixes their compensation. This proceeding, however, was not instituted to oust them from their office, nor to defeat their title to compensation, and therefore we have no concern with thefirst, second, *31 third and fourth sections of the act which deal with these subjects. The fifth section, however, defines the authority of the board after its organization, and the plaintiffs contend that the powers thus conferred upon this board are materially different, and more extensive than are the powers conferred upon boards of equalization in.other cities or upon county boards, and therefore theyaremade subject to a power not operative in any other part of the state. The section reads as follows :
Section 5. “That as soon as practicable after the first Monday of May, 1892, and annually thereafter, the said board shall proceed to hear complaints and to equalize the valuation of all real property in such city; and it shall have the power to raise the valuation of certain tracts and lots of real property as in its opinion are valued below the true value thereof,' and to reduce the valuation of such tracts and lots of real property as in its opinion are valued above their real value, as compared with the average valuation of the real property in such city; and it shall have all the power provided by law for decennial count}? boards for the equalization of real property, and shall be governed by the rule prescribed by such decennial boards in equalizing the valuations returned by district assessors, provided that it shall not reduce the value of the real property of the city below the aggregate thereof as fixed by the state board of equalization, nor below its aggregate value on the duplicate of the preceeding year, to which shall be added the value of all new entries and new structures over the value of those destroyed as returned for the current year.”
This section is dealing with the boar din its character of an annual board, and the powers it pre *32 scribes should be regarded as belonging to it while acting as such. These powers are identical with those enjoyed by decennial county board of equalization of real property.
Section '6 of the act (89 Ohio Laws, 284), makes this board also a decennial board, and except as otherwise provided in the act, clothes it with all the powers of a city decennial board for equalizing the value of real property, and also while so acting with all the powers of an annual board as well as some additional powers. The entire field of authority of this body, while acting as a decennial board, is covered by section- 6 of the act. There is no necessity for resorting to the preceding section, to ascertain its decennial powers. The suggestion, therefore, that the clause of section five, which gives the board the powers of a decennial county board, refers to it in decennial capacity is not sound. Section five, as we have seen, is dealing with it as an annual board and clothing it with authority, as such, and its provisions should be held to refer to it in that capacity.
Section 2804, Revised Statutes, which prescribes the duties and powers of annual county boards for equalizing the value of real and personal property, is in the following terms : .
Section 2804. “There shall be an annual board for the equalization of real-and personal property, moneys and credits in each county, exclusive of cities of the first and second class, to be composed of the county commissioners and county auditor, who shall meet for that purpose at the auditor’s office, in each county,, on the Wednesday . after the third Monday in May, annually. Said board shall have power to hear complaints, and to equalize the valuation of all real and personalproperty, moneys *33 and credits within the county, and shall be governed by the rules prescribed for the government of decennial county boards for the equalization of real property; provided, that said board shall not reduce the value of the real property of the county below the aggregate value thereof as fixed by the state board of equalization, nor below its aggregate value on the duplicate of the preceding year, to which shall be added the value of all new entries and new structures over the value of those destroyed, as returned by the several township assessors for the current year; provided, further, that except as to new structures, and structures destroyed, and lands and lots brought on the tax list since the preceding decennial state board of equalization, the annual county board shall not increase or reduce the valuation of any real estate, except in cases of gross inequality, and then only upon reasonable notice to all persons directly interested, and an opportunity for a full hearing of the question involved. ” * * *
An inspection and comparison of this section— 2804 — Revised Statutes, with the provisions of section 5 of the act in controversy, will show a substantial difference in the authority which they respectively confer. That conferred upon the annual board sitting in and for the city of Cleveland is materially greater than that conferred by the general statute, on all the other annual boards within the state. In the city of Cleveland the powers of the annual board of equalization are practically unlimited, except in respect of diminishing existing' aggregate values. No bounds whatever are fixed to its power to increase. It may act upon whole districts, and without personal notice to the owners of real property situated *34 therein. As to the owners of real property within the city of Cleveland the values set thereon by the preceding state board of equalization has no significance, except that their aggregate burden cannot be decreased. No such power has been conferred upon annual boards of equalization sitting in the other parts of the state. They can act only upon specific parcels of real property, and only in cases of gross inequality, and after personal notice.
Section 5 of the act in question (89 Ohio Laws, 384) therefore subjects real property within the city of Cleveland to a burden from which all other real property within the state is exempt, and therefore the section has,not a uniform operation throughout the state.
If it is a law of a general nature this failure' of uniform operation brings it within the constitutional inhibition of section 26, of Article II. of the constitution of this state.
That we have no infallible standard by which to determine what constitutes a general law, has contributed chiefly, if not solely, to the apparent want of harmony in the adjudications and opinions upon the subject in the several states whose constitutions require general laws to operate uniformly in every part of the state. Much, if not all, of this uncertainty would have been avoided if the courts had adopted and rigidly adhered to the principle that the character of the law in this respect, followed that of its subject-matter, being general wherever it dealt with a general subject, and local whenever it concerned a local subject. The necessities of the ease prohibit the question from being controlled by the form of the statute. If a statute, by expressly or inferentially declaring to be local, a subject of legislation existing in *35 every subdivision of the state and of general interest, could then proceed to legislate upon it for a portion of the state only, this constitutional provision would have no value. An evasion so easily made would accomplish practical nullification. This cannot be allowed. The form of the statute, therefore, should be disregarded, .and attention given to its substance. If, in fact, a statute relates to a subject which can be regulated only by a general law, such statute should be considered a general statute, although in form local; that is, couched in terms,by which its operation is expressly limited to a single locality. This limitation of its operation does not render the statute local, but makes it void because as thus limited it conflicts with the constitutional provision requiring general laws to operate uniformly throughout the state.
This view of the question also denies to the general assembly the power to conclusively determine whether a subject, upon which they are about to legislate, is general or local in its nature. If such subject is, in its nature, general, its character can not be changed by legislative declaration. If this result could be brought about in that way, all that would be necessary to the validity of a local statute dealing with a general subject, would be a prior declaration that the subject was local.
As the character of a statute, whether local or general, does not depend solely upon its form, so the character of its subject-matter is independent ■of legislative declaration. The two propositions are so closely allied as to be interdependent if not practically identical.
Our sense of the inherent fitness of things finds much to commend in the theory that all general subjects should be regulated by general laws, »and *36 all subjects of a local nature by local laws; and tbe mind meets great difficulty in divesting itself of tbe notion that tbe framers of tbe constitution intended to secure this end by tbe provision respecting the uniform operation of general laws. This court,- however, as well as those of other states having a similar provision, in the practical administration of justice, has not adhered to this theory: though at all times and in every ease, the subject of legislation has been accorded great weight in determining the character of the statute, and has generally controlled the question. Kelly v. The State, 6 Ohio St., 269; Hixson v. Burson et al., 54 Ohio St., 470.
The courts might have adhered more closely to the theory above stated, if there could be erected an infallible standard by which to determine the character of the subject of a statute, so that the line of demarkation between general, and local matters could be fixed with certainty, and each assigned to its proper class with absolute confidence. I know of no test capable of such universal application. The only practicable rule on the subject is that which requires each case as it arises to be placed in the one class or the other as the common understanding’ of mankind may dictate.
This is the rule of inclusion and exclusion, adopted by the Supreme Court of the United States in Davidson v. New Orleans,96 U. S., 97, in determining what shall constitute “due process of law” under the fourteenth amendment to the constitution of the United States, and which was referred to with approval by Judge Boynton, in McGill v. The State, 34 Ohio St., 228.
In the case before us, however, we encounter no difficulty in assigning the subject of the section in *37 question (section 5, 89 Ohio Laws, 283), to its appropriate class. Its nature, is unmistakably general. The power it confers could be exercised as appropriately over every parcel of land within the state as it could be over those situated within the limits of the city of Cleveland, to which its operation is confined. A subject of more widespread interest can hardly be conceived. It directly concerns every owner of a parcel of land within the state, and indirectly the owner of every other species of property liable to taxation under our system of raising- public revenue, and also affects the public revenue itself.
According to the generally received notions of mankind, a subject is general wherever it relates to interests so extensive, and to persons so numerous. The record discloses no local conditions demanding special relief, and none are suggested in argument that might not exist in any other section of the state. The city of Cleveland may be thrifty, and that thrift may cause some portions of the city to develop more rapidly than other sections, and values of real property fluctuate accordingly. This, however, may be affirmed of many other towns and cities within the state, and in a greater or less degree of mining and oil producing territory, and even agricultural districts lying outside of towns and cities. And in other instances decay of trade or the destruction or removal of extensive manufacturing establishments has produced a similar change in values, which demand relief as loudly as similar conditions do in the city of Cleveland.
This court held, in Commissioners v. Rosche Bros., 50 Ohio St., 103, that an act authorizing a county containing a city of the first grade of the *38 first class (Hamilton county), to refund taxes erroneously paid under section 2742, Revised Statutes, violated section 26 of Article XI, of the constitution of this state. That act granted relief to tax payers who, in a county having a city of the first grade of the first class, had erroneously paid taxes under a certain section of the Revised Statutes, while no relief was provided for a taxpayer for taxes paid under similar conditions in the other counties of the state. The act in that case granted relief to persons who had paid taxes in one county, which were denied to persons who under identical circumstances, may have paid them in the other counties of the state. In the case under consideration the statute imposes a burden upon owners of real property situated in cities of the second grade of the first class (Cleveland), not imposed upon the owners of real property, situated in other parts of the state. We think section 26, of Article XI, of the constitution, prohibits this being done. This conclusion renders a consideration of the other questions made upon the record unnecessary.

Judgment affirmed.