ST. LOUIS, I. M. & S. RY. CO. v. DAVIS et al., State Board of Railroad Assessors. LITTLE ROCK & FT. S. RY. CO. v. SAME. LITTLE ROCK & H. S. W. R. R. v. SAME.

(Circuit Court, E. D. Arkansas, W. D.   October 8, 1904.)

Nos. 1,396, 1,398, 1,399.

**1. FEDERAL COURTS—JURISDICTION MUST CLEARLY APPEAR.**

The judiciary act of 1887–88 (Act March 3, 1887, c. 373, 24 Stat. 552; Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 507]) was intended to contract the jurisdiction of the federal courts, and all doubts must be resolved against their jurisdiction.

**2. SAME—FEDERAL QUESTION.**

If it appears from a bill filed in a federal court that in any aspect which the case may assume the right to relief may depend upon the construction of a provision of the Constitution or laws of the United States, and that such claim is not merely colorable, but rests upon a reasonable foundation, the court has jurisdiction of the cause.

**3. SAME.**

A federal court is not given jurisdiction of a suit to enjoin officers of a state from a contemplated act by an allegation that such act will be in violation of the fifth constitutional amendment; such amendment being a limitation only upon the powers of Congress.

**4. STATES—MODE OF ASSESSING RAILROAD PROPERTY—CONSTITUTIONALITY.**

The action of state authorities in taking the entire valuation of the property of a railroad company, without as well as within the state, and dividing it upon a mileage basis for the purpose of fixing the value of that within the state for purposes of taxation, is not in violation of the commerce clause of the federal Constitution.

**5. SAME.**

An assessment of the property of a railroad company by the board of railroad assessors of the state of Arkansas, pursuant to the state statutes (Sand. & H. Dig. §§ 6464–6473), which provide the time and place for such assessment and for a public hearing, cannot be held in violation of the fourteenth amendment to the federal Constitution, as depriving the company of property without due process of law.

**6. SAME.**

The provision of the fourteenth amendment to the Constitution of the United States, which prohibits any state from denying to any person within its jurisdiction the equal protection of the laws, is not violated by the failure of a state to provide for the uniform taxation of different classes of property; such matters being left within the control of the states.

**7. JURISDICTION OF FEDERAL COURTS—CONSTITUTIONAL QUESTION—ACT OF STATE.**

The assessment by a state board of the property of a railroad company at a higher percentage of its actual value than property of other classes is assessed, in violation of a provision of the state Constitution requiring uniform taxation of all classes of property, without statutory authority and contrary to the law of the state as declared by its Supreme Court, is not an act of the state within the meaning of the provision of the fourteenth constitutional amendment, prohibiting a state from denying to any person the equal protection of the laws; and the jurisdiction of a federal

¶ 7. Jurisdiction of federal courts in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

court cannot be invoked for redress on the ground that the action of the board is a violation of such provision, the remedy of the company being in the state courts.

In Equity.   On demurrer for want of jurisdiction.

S. B. Johnson and Oscar L. Miles, for complainant.
George W. Murphy, Atty. Gen., and James P. Clarke, for defendants.

TRIEBER, District Judge.   The complainant and several other railroads seek to enjoin the defendants from certifying the assessment made by them as a state board of the property of the railroads to the assessors of the various counties, for the purpose of having them placed upon the tax books.   The bill is very ably drawn, setting up the facts very fully, and at the same time as concisely as possible.   The material allegations, so far as they are necessary to a correct understanding of the issues involved on this demurrer to the jurisdiction, may be briefly stated as follows:

The complainant is a railway corporation organized under the laws of the states of Missouri and Arkansas.   It owns and operates a railroad from the city of St. Louis, in the state of Missouri, through the state of Missouri, and then through the state of Arkansas, to the boundary line between the states of Arkansas and Texas.   It owns and operates numerous branches in Missouri and Arkansas, and also has railroad lines connected with it in the states of Illinois and Louisiana. The total length of main and branch railroads owned by it is 1846.31 miles, of which 987.06 miles are in the state of Arkansas.   The bill then sets forth the statutes of Arkansas regulating the assessment of railroad property for the purposes of taxation, those statutes being sections 6464–6469, 6471–6473, of Sandels & Hill's Digest of Statutes of Arkansas, as amended by the act of May 4, 1899 (Acts 1899, p. 244).   These statutes provide very fully how the railroad property shall be assessed. Section 6464 constitutes the Governor, Secretary of State, and Auditor of State as the board.   Section 6465 provides that on the first Monday in June each year they shall proceed to ascertain the value of all property of railroad corporations.   Section 6466 requires the railroads to return sworn lists or schedules of taxable property.   Section 6467 requires the railroads to file those schedules on the first Monday in May of each year.   Section 6468 requires them to state the fair and actual aggregate value of the whole railroad, taking into consideration the right of way, and estimating everything situated upon such right of way or pertaining to such right of way.   Section 6469 requires these schedules to be verified.   Sections 6471 and 6472 provide what part shall be deemed real estate and what personal.   Section 6473 provides that the board shall meet on the first Monday in August every year, and, after being duly sworn to fearlessly, impartially, and honestly discharge their duties, shall proceed to examine the lists or schedules of the description and value of the railroad track of the railroad companies, and shall make an assessment which is fair and reasonable, and thereupon the Secretary of State is to certify to the assessor of each county in which the railroad is located so much of the assessment list of such

railroad as is located in said county or city or town, and the assessor shall list and assess the same as real estate.

There is no complaint made that the acts of Arkansas are in any way obnoxious to any constitutional provision, either state or national. But it is charged that, although section 5 of article 16 of the Constitution of the state of Arkansas provides that "no one species of property from which a tax may be collected shall be taxed higher than another species of property of equal value," the defendants as the state board have assessed the property of complainant practically at its full value, while all other property in the state of Arkansas is only assessed at about 30 per cent. of its actual value; that in arriving at the value of the complainant's road the board undertook to value the entire railroad system, within and without the state of Arkansas, and wherever located, as a unit, profit-producing plant, including in said valuation property of the value of many millions of dollars, consisting of terminal property located in the city of St. Louis, Mo., and also in the state of Illinois, owned by the complainant and used in connection with its business in Arkansas or elsewhere, and which property is taxed now in other states, and if permitted to be included in this assessment would amount to a double taxation. It is further charged that the board made no inspection or examination of any of the property of the complainant before assessing it, and therefore it is claimed that the acts of the board, in making the assessment as it did, are a violation of the constitutional provision of the state of Arkansas hereinbefore cited, and that it is also void under the fifth and fourteenth amendments to the Constitution of the United States, in depriving complainant of property without due process of law and denying to it the equal protection of the laws.

Another violation of the Constitution of the United States is claimed by reason of the fact that the action of the defendants in taking into consideration all of the property of the complainant, including that situated in states other than the state of Arkansas, for the purpose of arriving at a valuation, is in conflict with the commerce clause of the national Constitution (article 1, § 8). The bill charges the acts of defendants to be in violation of the laws of the state in the following language:

"Wherefore your orator avers that said assessment, made on such basis, was grossly erroneous and a fraud upon your orator, and was not authorized or warranted, but was expressly forbidden by the laws of the state of Arkansas."

The jurisdiction of this court is not invoked upon the ground that there is a diversity of citizenship, but solely upon the ground that the action of the defendants tends to deprive complainant of the rights guarantied to it by the amendments to the national Constitution as hereinbefore stated, and therefore raises a federal question. Complainant in its bill seeks to do equity by offering to pay the taxes upon what it claims to be a proper basis of valuation—that adopted for the assessment of all other property in the state—and submits that the assessment of its property in 1903 was fair and just, and a proper basis for the assessment to be made this year, and it offers to pay the taxes on that assessment.

In determining questions of jurisdiction of the national courts, there are several well-settled rules to govern the courts. Act March 3, 1887, c. 373, 24 Stat. 552, as corrected by Act Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 507), was intended to contract the jurisdiction of the national courts, and all doubts as to jurisdiction must be resolved against it. Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511; Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34, 39 L. Ed. 85; Walker v. Collins, 167 U. S. 57, 17 Sup. Ct. 738, 42 L. Ed. 76; Sawyer v. Kochersperger, 170 U. S. 303, 18 Sup. Ct. 946, 42 L. Ed. 1046; Railway Co. v. Bell, 176 U. S. 321, 20 Sup. Ct. 399, 44 L. Ed. 486; Arkansas v. Coal Company, 183 U. S. 185, 22 Sup. Ct. 47, 46 L. Ed. 144; Fergus Falls v. Water Company, 72 Fed. 873, 19 C. C. A. 212; Montana Company v. Boston, etc., Mining Company, 93 Fed. 274, 35 C. C. A. 1; Filhiol v. Torney (C. C.) 119 Fed. 874, affirmed in 194 U. S. 356, 24 Sup. Ct. 698, 48 L. Ed. 1014; Joy v. City of St. Louis (C. C.) 122 Fed. 524. At the same time it is also well settled that, if it appears from the bill that in any aspect which the case may assume the right to obtain relief may depend upon the construction of a provision of the Constitution or laws of the United States, and is not merely a colorable claim, but rests on a reasonable foundation, the national courts have jurisdiction to determine the case. Illinois Central R. R. Company v. Chicago, 176 U. S. 646, 20 Sup. Ct. 509, 44 L. Ed. 622 (where the court say: "In determining the existence of a federal question, it is only necessary that it is set up in good faith and is not wholly destitute of merit"); St. Paul, etc., Railway Company v. St. Paul & N. P. Railroad Company, 68 Fed. 2, 15 C. C. A. 167. But the mere fact that the bill alleges constitutional questions is not sufficient, if it plainly appears that such averment is not real and substantial, but is without color or merit. Newburyport Water Co. v. Newburyport, 193 U. S. 561, 576, 24 Sup. Ct. 553, 48 L. Ed. 795.

The claim of complainant that the action of the defendants is in violation of the fifth amendment to the Constitution cannot be maintained, as that amendment is only intended as a limitation upon the powers of Congress, and does not apply to any actions of the state. Barron v. Baltimore, 7 Pet. 243, 8 L. Ed. 672; Fox v. Ohio, 5 How. 410, 12 L. Ed. 213; Pervear v. Massachusetts, 5 Wall. 480, 18 L. Ed. 608; Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616; Presser v. Illinois, 116 U. S. 265, 6 Sup. Ct. 580, 29 L. Ed. 615; Spies v. Illinois, 123 U. S. 166, 8 Sup. Ct. 21, 22, 31 L. Ed. 80; Talton v. Mayes, 163 U. S. 376, 16 Sup. Ct. 986, 41 L. Ed. 196; Lloyd v. Dollison, 194 U. S. 445, 24 Sup. Ct. 703, 48 L. Ed. 1062.

Nor is the action of the state authorities in the case at bar in any way affected by the commerce clause of the national Constitution. Learned counsel, neither in their oral argument nor in their elaborate and able brief filed in the case, discuss that phase, and it may therefore be treated as abandoned; but if the fact that the defendants, as charged in the bill, value the entire property of the complainant, a large part of which is situated in states other than this, and then prorate it on a mileage basis, is claimed to be a violation of that constitutional provision, it must be overruled, for the Supreme Court has determined this question

adversely to this contention in numerous cases. Western Union Telegraph Company v. Massachusetts, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790; Pullman Car Company v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613; Massachusetts v. Western Union Telegraph Company, 141 U. S. 40, 11 Sup. Ct. 889, 35 L. Ed. 628; Pittsburg, etc., Railway Company v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031; Postal Telegraph Company v. Adams, 155 U. S. 688, 15 Sup. Ct. 268, 39 L. Ed. 311; Western Union Telegraph Company v. Taggart, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49; Adams Express Company v. Ohio, 165 U. S. 194, 17 Sup. Ct. 604, 41 L. Ed. 965.

Nor are the allegations in the bill sufficient to sustain the claim that complainant has been deprived, or is about to be deprived, of its property without due process of law. While the courts have always declined to give an authoritative and exact definition of the meaning of the constitutional provision that "no person shall be deprived of life, liberty, or property without due process of law," preferring that the enunciation of the principle which governs each case should be determined as it arises, as being the better mode of arriving at a sound decision (Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616; Orient Insurance Company v. Daggs, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552), there is no foundation whatever for the claim that the provisions of the Arkansas statutes regulating the taxation of railway property, or the actions of the defendants, were not a full compliance with that provision of the fourteenth amendment. The acts of the Arkansas Legislature, the purport of which has been hereinbefore set forth, provide for the manner in which the assessment is to be made, the time and place, and a public hearing, and there is no allegation in the bill that complainant was, by the action of the defendants or any other officers of the state of Arkansas, deprived of either of these rights. In fact, it is admitted that the complainant was present at the time the defendants acted as a board, and was heard by its counsel. This is clearly within the constitutional provisions as defined by the Supreme Court in many cases. Davidson v. New Orleans, supra; Mobile County v. Kimball; 102 U. S. 691, 26 L. Ed. 238; Missouri Pacific Railway Company v. Humes, 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463; Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; Gallup v. Schmidt, 183 U. S. 300, 22 Sup. Ct. 162, 46 L. Ed. 207. In the last-cited case the court say:

"It has frequently been held by this court, when asked to review tax proceedings in state courts, that due process of law is afforded litigants if they have an opportunity to question the validity or the amount of an assessment or charge before the amount is determined, or at any subsequent proceedings to enforce its collection, or at any time before the final judgment is entered."

Complainant's right to invoke the jurisdiction of this court, if it exists at all, must therefore rest upon that provision of the fourteenth amendment which prohibits the states from denying to any person within its jurisdiction the equal protection of the laws.

Uniformity of taxation for all classes in the state is not a right or privilege guarantied by the Constitution of the United States or any of

its amendments. On the contrary, it is the settled rule of the national courts that each state possesses the undoubted power, in the absence of any limitation contained in its own organic act, to determine for itself the manner and mode of taxation, as well as the manner of the assessment of its valuation, without violating any provision of the national Constitution if it fails to provide for a uniform taxation for different classes of property. Delaware Railroad Tax Cases, 18 Wall. 206, 21 L. Ed. 888; Kentucky Railroad Tax Cases, 115 U. S. 321, 6 Sup. Ct. 57, 29 L. Ed. 414; Home Insurance Company v. New York, 134 U. S. 594, 10 Sup. Ct. 593, 33 L. Ed. 1025; Henderson Bridge Company v. City of Henderson, 173 U. S. 592, 19 Sup. Ct. 553, 43 L. Ed. 823.

As expressed by Mr. Justice Miller, in Memphis Gaslight Company v. Taxing District, 109 U. S. 398, 3 Sup. Ct. 205, 27 L. Ed. 976:

"The Constitution of the United States does not profess in all cases to protect property from unjust or oppressive taxation by the state. That is left to state Constitutions and state laws."

In Kirtland v. Hotchkiss, 100 U. S. 491, 25 L. Ed. 558, Mr. Justice Harlan, in delivering the opinion of the court, said:

"It may therefore be regarded as the established law of this court that so long as the state, by its laws prescribing the mode and subjects of taxation, does not intrench upon the legitimate authority of the Union, or violate any rights recognized or secured by the Constitution of the United States, this court, as between the state and its citizen, can afford him no relief against state taxation, however unjust, oppressive, or onerous."

And in the Kentucky Railroad Tax Cases, supra, it was held that, when there is nothing in the Constitution of a state requiring uniform taxation upon all descriptions of property, the matter is left wholly to the discretion of the legislative power, and there is nothing to forbid the classification of property for purposes of taxation and the valuation of different classes by different methods. The rule of equality in respect to the subject only requires the same means and methods to be applied impartially to all the constituents of each class. Other cases affirming this rule are: Pacific Express Company v. Seibert, 142 U. S. 339, 12 Sup. Ct. 250, 35 L. Ed. 1035; Columbus, etc., Railroad Company v. Wright, 151 U. S. 470, 14 Sup. Ct. 396, 38 L. Ed. 238; Magoun v. Illinois Trust Company, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; Travellers' Insurance Company v. Connecticut, 185 U. S. 364, 22 Sup. Ct. 673, 46 L. Ed. 949.

The right of complainant to have its property taxed uniformly with all other property in the state of Arkansas depends, therefore, solely upon the constitutional provision of the state of Arkansas. Assuming, but not deciding, that, although the right claimed by complainant does not come from the Constitution or a law of the United States, but rests solely upon the Constitution of the state of Arkansas, a discrimination in the assessment or taxation of complainant's property brings it within the protection of the fourteenth amendment, the question to be determined is, whose actions of that nature will have that effect, and thus enable the complainant, although a citizen of the same state as the defendants, to invoke the jurisdiction of a federal court?

As the Constitution and statutes of the state of Arkansas confessedly

do not deprive complainant of any rights guarantied to it by the national Constitution, or deny to it the equal protection of the laws, nay, in fact, the right of complainant to uniform taxation of its property being derived solely from the provision of the state Constitution, it cannot be claimed that the complainant is being deprived by the state of the equal protection of the law through any action of the legislative department of the state. Furthermore, it having been determined by the Supreme Court of the state that to assess one class of property, such as railroad or bridge property, at full value, when all other property in that county is being assessed at a lower valuation, is a violation of the uniformity clause of the state Constitution, it cannot be claimed that the complainant is deprived of the equal protection of the laws of the state by any action of the judicial department of the state of Arkansas. Such has been the decision of the highest court of the state of Arkansas in Ex parte Ft. Smith, etc., Bridge Company, 62 Ark. 461, 36 S. W. 1060. In that case the bridge of the company, subject to taxation in Crawford county, was assessed for taxation at $125,000, its full market value, while the basis for the assessment of real estate in that county was only 50 per cent. of its market value, and the court held the assessment of the bridge was a violation of the uniformity clause of the Constitution of the state. Mr. Justice Battle, who delivered the opinion of the court in that case, said:

"The duty to contribute to the support of the state government by the payment of taxes is imposed upon all persons owning property subject to taxation. The Constitution provides that this burden shall be apportioned among them according to the value of their property, to be ascertained as directed by law. When, therefore, the property of a few is taxed according to its value, and of all others at one-half its value, then the few are required to contribute double their portion of the burden. This is manifestly a wrong, and justice demands that it be redressed, whenever it can be done conformably to the laws."

Are the alleged acts of the defendants, acting as officers of the state, the acts of the state, within the meaning of the fourteenth amendment? There are a large number of decisions rendered by the Supreme Court of the United States, in which the language used as to what acts of officers are the acts of the state is very broad, and, followed literally, would justify the assumption of jurisdiction by this court of the case at bar. But it is a well-settled rule of construction of opinions of courts that the language in a case must be applied to the particular facts of the case in which it is used. Cohens v. Virginia, 6 Wheat. 264, 5 L. Ed. 257; United States v. Wong Kim Ark, 169 U. S. 649, 679, 18 Sup. Ct. 456, 42 L. Ed. 890.

Applying this rule, the cases most strongly relied upon by learned counsel for the complainant can be easily distinguished from the case at bar. The principal case upon which complainant relies is Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676. In that case an application for a writ of habeas corpus was made to the Supreme Court on the part of the state of Virginia, one of whose judges Cole was, and also by Cole himself. The petitioner was in the custody of the national authorities, under a bench warrant directed by the United States District Court, on an indictment found by the grand jury of that court, charging him with

violation of Act Cong. March 1, 1875, c. 114, § 4, 18 Stat. pt. 3, p. 336 [U. S. Comp. St. 1901, p. 1261], for having excluded, while acting as an officer charged by the laws of the state of Virginia with the selection of jurors in a state court, citizens qualified under the laws of the state of Virginia to serve as jurors in its courts on account of their race and color. The court in that case used this sweeping language:

"We have said the prohibitions of the fourteenth amendment are addressed to the states. * * * They have reference to actions of the political body denominated a state, by whatever instrument or in whatever modes that action may be taken. A state acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the state, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a state government, deprives another of property, life, or liberty without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name and for the state, and is clothed with the state's power, his act is that of the state. This must be so, or the constitutional prohibition has no meaning. Then the state has clothed one of its agents with power to annul or to evade it."

But the real question involved in that case was the constitutionality of the act of Congress under which Cole was indicted, and as explained by the Chief Justice in Barney v. New York, 193 U. S. 430, 440, 24 Sup. Ct. 502, 48 L. Ed. 737, "was a case in which what was regarded as the final judgment of a state court was under consideration." The opinions of the court in Scott v. McNeal, 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896, and Chicago, Burlington & Quincy Railroad Company v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 978, are other strong cases relied upon by complainant as sustaining the jurisdiction. Both of these cases were in error to the Supreme Courts of states.

In Scott v. McNeal a court of probate took charge of the estate of a living person for the purpose of administration, under the supposition that the man was dead. In the course of administration the court directed the administrator to sell his land for the payment of debts, and it was held by the Supreme Court, in reversing the decision of the courts of the state of Washington, that the probate court had no jurisdiction to take possession of a living person's estate, and that the sale thereof under the order of the probate court, made without notice to him, either actual or constructive by publication, was a deprivation of property without due process of law within the meaning of the fourteenth amendment.

In Chicago, Burlington & Quincy Railroad Company v. Chicago, the facts were that the city of Chicago had, under the powers conferred on it by the state of Illinois, instituted proceedings to condemn a part of a railroad company's right of way for street purposes. The Constitution and laws of the state of Illinois made ample provision for due process of law and full compensation for the property thus sought to be taken. In the trial before the court, which was conducted according to the usual modes governing the courts of the state of Illinois, the damages for the property taken were assessed at the nominal sum of one dollar, although

of much greater value. The federal question was first raised in the motion for a new trial, among the grounds for which were the following:

"That the several rulings of the court in excluding proper evidence for the defendant, the statute under which the proceedings for condemnation were instituted, and the verdict of the jury and the judgment based upon it, were all contrary to the fourteenth amendment, declaring that no state shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its limits the equal protection of the laws."

The court held that, when the trial court overruled the motion for a new trial and entered judgment, it necessarily held adversely to these claims of federal right, and although on appeal the Supreme Court of Illinois did not in its opinion expressly refer to the Constitution of the United States, the court held that the judgment of affirmance necessarily denied the federal rights thus specially set up by the defendant, for, as the court states:

"That judgment could not have been rendered without deciding adversely to such claims of right."

Although the court uses language as broad as that quoted hereinbefore from the decision in Ex parte Virginia, and refused to dismiss the writ of error, yet it held that the ruling of the trial court in the admission and rejection of evidence and its charge to the jury, which resulted in a verdict for the nominal sum of one dollar, did not violate any provision of the fourteenth amendment, and for this reason affirmed the judgment.

These cases are referred to for the reason that they contain the strongest expressions to be found in any of the decisions of the Supreme Court on that subject.

On the other hand, in Virginia v. Rives, 100 U. S. 313, 25 L. Ed. 667, an application was made to the Supreme Court for a mandamus commanding the United States judge of the District Court for the Western district of Virginia to cause to be redelivered by the marshal of said district to the jailer of Patrick county the bodies of two persons who had been indicted in the courts of the state of Virginia for the crime of murder. They, being negroes, had removed the case into the Circuit Court of the United States upon the ground that they were denied a right guarantied to them under the Constitution and laws of the United States, viz., that the grand jury which found the indictment against them, as well as the jury summoned to try them, was composed entirely of the white race, although there were many negroes in that county subject to jury duty and qualified under the laws of the state of Virginia to serve as such; and the court held that the prisoners must be remanded to the state court, Mr. Justice Strong, speaking for the court, saying:

"It is evident, therefore, that the denial or inability to enforce in the judicial tribunals of a state rights secured to a defendant by any law providing for the equal civil rights of all persons citizens of the United States, of which section 641 speaks, is primarily, if not exclusively, a denial of such rights, or an inability to enforce them, resulting from the Constitution or laws of the state, rather than a denial first made manifest at the trial of the case. In other words, the statute has reference to a legislative denial or an inability resulting from it. * * * When a statute of the state denies his right, or

interposes a bar to his enforcing it, in the judicial tribunals, the presumption is fair that they will be controlled by it in their decisions; and in such a case a defendant may affirm on oath what is necessary for a removal. Such a case is clearly within the provisions of section 641 [U. S. Comp. St. 1901, p. 520]. But when a subordinate officer of the state, in violation of state law, undertakes to deprive an accused party of a right which the statute law accords to him, as in the case at bar, it can hardly be said that he is denied, or cannot enforce, in the judicial tribunals of the state the rights which belong to him. In such a case it ought to be presumed the court will redress the wrong. If the accused is deprived of the right, the final and practical denial will be in the judicial tribunal which tries the case, after the trial has commenced. If, as in this case, the subordinate officer whose duty it is to select jurors fails to discharge that duty in the true spirit of the law; if he excludes all colored men solely because they are colored; or if the sheriff to whom a venire is given, composed of both white and colored citizens, neglects to summon the colored jurors only because they are colored; or if a clerk whose duty it is to take the 12 names from the box rejects all the colored jurors for the same reason—it can with no propriety be said the defendant's right is denied by the state and cannot be enforced in the judicial tribunals. The court will correct the wrong, will quash the indictment or the panel, or, if not, the error will be corrected in a superior court. We cannot think such cases are within the provisions of section 641. Denials of equal rights in the action of the judicial tribunals of the state are left to the revisory powers of this court."

The latest case on this subject, and one in which the facts are very much like those alleged in complainant's bill, is Barney v. City of New York, 193 U. S. 430, 24 Sup. Ct. 502, 48 L. Ed. 737, decided March 21, 1904, by a unanimous court. In that case, as in this, the laws of the state of New York provided for proceedings in no way conflicting with any of the provisions of the fourteenth amendment. The officers acting for the city of New York, but under the authority of the laws of the state of New York, failed to comply with the acts of the Legislature, and their acts had been declared by the courts of the state of New York as violating the state law. The jurisdiction of the Circuit Court of the United States was invoked by the plaintiff, who was a citizen of the state of New York, upon the ground, as in the case at bar, that the actions of these officers deprived him of a right guarantied to him by the fourteenth amendment; but the Circuit Court, and, upon appeal, the Supreme Court of the United States, after reviewing all the former decisions of that court, and distinguishing ex parte Virginia, Chicago, Burlington & Quincy Railway v. Chicago, and Reagan v. Farmers' Loan & Trust Company, 14 Sup. Ct. 1047, 38 L. Ed. 1014, held that, as the defendants were proceeding, not only in violation of the provisions of the state law, but in opposition to its plain prohibitions, as declared by the courts of the state of New York (identically with the facts as they appear in the case at bar), the decree of the Circuit Court dismissing the bill for want of jurisdiction was correct. The court in that case say:

"Controversies over violations of the laws of the state of New York are controversies to be dealt with by the courts of the state. Complainant's grievance was that the law of the state had been broken, and not a grievance inflicted by the action of the legislative or executive or judicial department of the state. The principle is that it is for the state courts to remedy acts of state officers done without authority of, or contrary to, the state law."

Among the authorities cited by the court to sustain its conclusion the following Circuit Court decisions are to be found: Manhattan Rail-

way Company v. City of New York, 18 Fed. 195; Kiernan v. Multnomah County, 95 Fed. 849; and In re Storti, 109 Fed. 807. As these cases are thus approved by the Supreme Court, the conclusions therein reached by the judges who delivered the opinions are entitled to the same consideration as if they had been decided by the Supreme Court itself, for a citation and approval by that court is practically an adoption of the views of the judges who delivered them. For this reason it is important to see what was decided therein.

In Manhattan Railway Company v. City of New York it was sought to obtain an injunction from the federal court to restrain the collection of taxes alleged not to have been assessed in conformity with the laws of the state, and therefore claimed to be in violation of the equal protection clause of the fourteenth amendment. The unlawful acts of the taxing officers were alleged to consist of a discrimination by the assessing officers, whereby the property of complainant was subjected to an unequal share of the public burden; but the court, in dismissing the bill for want of jurisdiction, held:

"If the authorities of the city of New York are endeavoring to enforce the collection of taxes against the complainants which have not been assessed in conformity with the statutes of the state, if the taxing authorities under color of law are proceeding illegally, their action cannot be imputed to the state, and the constitutional provision cannot be invoked and does not operate. The complainants can obtain ample redress under the laws of the state." 18 Fed. 197.

In the Kiernan Case, supra, the jurisdiction of the Circuit Court was sought to be invoked upon the ground that the collection of certain taxes by the defendant was not authorized by the laws of the state of Oregon, in pursuance of which the sheriff was acting, and that to permit the seizure and sale of complainant's property under those proceedings would be a violation of the fourteenth amendment; but the court declined to assume jurisdiction, holding that:

"In all such cases, where there is not the requisite diverse citizenship to give the court jurisdiction, the remedy for the injuries complained of is in the state courts."

In Re Storti, supra, the court held, quoting from the syllabus of the case:

"Ordinarily the provision of the fourteenth amendment relating to due process of law does not apply where the Legislature of a state has performed its duty by providing for proceedings which answer the constitutional requirement, and where the fault is either with the court or officers."

The judgment of the Circuit Court dismissing the cause for want of jurisdiction was affirmed in 183 U. S. 138, 22 Sup. Ct. 72, 46 L. Ed. 120.

Counsel for complainant have referred the court to a number of able decisions rendered by Circuit Courts sustaining their contention; but, in view of this last decision of the Supreme Court of the United States, they cannot be considered as authorities by this court. If the contention of complainant that whenever a person acting as an officer of the state does any act in violation of the laws of the state, which if not prevented by the courts would result in the unlawful taking of property,

brings the case within the jurisdiction of the national courts, regardless of a diversity of citizenship, be sustained, it would practically result in filling the dockets of those courts with cases of every conceivable nature.

The Constitution of the state of Arkansas prohibits any county or city from levying a tax exceeding five mills. A levy by the officers of either of these agencies of the state of a higher tax would, of course, be void; but would that fact justify the interposition of a national court, if there is no diversity of citizenship? An execution in the hands of a sheriff, issued on a judgment of a state court which acted entirely without jurisdiction, is an absolute nullity; but would that fact confer jurisdiction on a federal court to prevent the sheriff from making a seizure under that void execution, when there is no diversity of citizenship, or would not the party be required to apply for relief to a court of the state? The Constitution and laws of the state of Arkansas require property to be assessed for taxation by a county assessor. Would the fact that the county clerk, in violation of the laws of the state, places property on the tax books on an assessment made by himself, and not the assessor, enable the owner to invoke the jurisdiction of this court, upon the sole ground that, the action of the clerk being in violation of the laws of the state, and therefore void, he would be deprived of his property without due process of law? Many other illustrations of this kind could be mentioned, but they would serve no useful purpose. In the opinion of the court the acts of the officers charged by law with the assessment, levy, or collection of taxes, done in direct violation of the laws of the state, are not the actions of the state, and the jurisdiction of the national courts cannot be invoked upon the ground that the unlawful acts of the officers are a violation of the fourteenth amendment. The courts of the state can grant ample redress, and this court will not assume that they will refuse to give due effect to the Constitution and laws of the state, whose officers they are.

Being clearly of the opinion that the allegations in the bill are not sufficient to confer jurisdiction on this court, the demurrer must be sustained, and the bill dismissed for want of jurisdiction.

As the same questions are involved in the cases of Little Rock & Fort Smith Railway (No. 1,398) and Little Rock & Hot Springs Western Railroad (No. 1,399) against the same defendants, the same order will be entered in those cases.